THE STATE OF KANSAS, *Appellee*, v. W. E. JACKETT, *Appellant*.

No. 16,470.

### SYLLABUS BY THE COURT.

HOMICIDE—*Commission of the Act Denied—Instructions on Self-defense.* In a prosecution for a homicide, where there is substantial evidence tending to show that the accused acted in self-defense, the fact that he denies having committed the act which caused the death is not necessarily a ground for refusing to submit to the jury the question whether the killing was justifiable.

Appeal from Kingman district court; PRESTON B. GILLETT, judge. Opinion filed November 6, 1909. Reversed.

*John W. Adams,* and *George W. Adams,* for the appellant.

*Fred S. Jackson,* attorney-general, *Charles D. Shukers,* special assistant attorney-general, *H. E. Walter,* county attorney, and *David M. Dale,* for the appellee.

The opinion of the court was delivered by

MASON, J.: W. E. Jackett appeals from a conviction of manslaughter in the fourth degree. The state's evidence tended to show these facts: On the night of October 31, at about one o'clock, a party of thirteen boys. and young men, of ages varying from seventeen to twenty-three years, while engaged in a number of lesser depredations, for a period of three or four minutes stoned a small wooden house occupied by Jackett. as a restaurant and also as his home, throwing against the sides and roof stones described as varying in size from that of a hen's egg down. Some one, presumably Jackett, came out of the building and fired five shots from a revolver. The assailants left, but returned in. about twenty minutes and the episode was repeated. This time two shots were fired, one of which wounded a member of the party, causing his death. On being· arrested Jackett admitted that he had probably fired. the fatal shot.

At the trial Jackett took the stand on his own behalf and denied having done the shooting, denying also· that he had any recollection of having admitted it. He testified that during the assault upon his house he had heard some person using oaths and telling others to shoot. This was partially corroborated by a witness· for the state, who said that such language was used by· one of the assailants, possibly more than once, but not until the last shot had been fired. There was also evidence that at the time of the trial—some six weeks after the homicide—holes were observable in the building apparently made by bullets. The defendant further· testified that shortly before the attack some one came· to his door and tried to get in. He also made an offer· to show that during the throwing of the stones against the building he was in great fear of personal injury· and believed his life to be in danger; that he had been. warned that an attempt would be made on that night:

to kidnap him and take him from his house; that about a month before he had had trouble with a member of the attacking party and had caused his arrest, and that the person arrested had since threatened him with personal violence. This offer was rejected.

The trial court refused to instruct the jury upon the law of self-defense, taking the view that no issue of justifiable shooting could be involved after the defendant had testified that he had not shot at all. This view is certainly a plausible one, for in denying that he did the shooting the defendant necessarily denied that he had done it for his own protection under stress of fear. In a civil case the testimony which a party gives in person ordinarily is absolutely binding upon him and limits the scope of inquiry quite as much as though the statements made by him on the stand were formally inserted in his pleading by amendment. But in a criminal case no further pleading can be required of the defendant who has entered a plea of not guilty, and under that he may make any ordinary defense. He is not absolved from all obligation to be consistent in his attitude, but he is not to the fullest extent controlled by the rules of equitable estoppel. Here the testimony offered by the accused was not contradictory to that which he had already given. It might be true that he did not shoot, and yet the circumstances might have been such that shooting would have been justifiable, just as one sued for uttering defamatory words may truthfully maintain that he never spoke them and that they were true. (*Cole v. Woodson*, 32 Kan. 272.) The fact that a man denies that he killed another is not complete proof that, if he did, the act was without excuse, inasmuch as in making the denial he may be actuated by a repugnance to admit that he has taken human life under any circumstances. Jackett's proffered testimony that during the attack upon his house he entertained a reasonable fear of bodily harm was not objectionable on the ground that it contradicted

what he had already sworn to, but only on the theory that what he had already said, by eliminating the issue of self-defense, had made testimony as to his own state of mind immaterial. That theory is unsound because the jury were not bound to treat his testimony as wholly false or wholly true, for it in fact might be partly false and partly true. (*The State v. Kittle,* 70 Kan. 241, 243.) Their first duty was to decide whether he did the killing. If they had found otherwise, their labor would have been at an end. But having disbelieved his testimony on this point, it then became necessary to determine the circumstances of the killing. This involved inquiring not only whether certain conditions were present — such as willfulness and premeditation—that would aggravate the offense, but also whether certain other conditions existed—such as heat of passion or the appearance of imminent peril— that would palliate it or even absolve the defendant from legal liability altogether.

In a number of homicide cases it has been held that the denial by the defendant that he did the killing rendered it unnecessary to instruct upon the matter of self-defense. But in nearly or quite all of them there was an entire lack of evidence that the killing was justifiable, so the decisions resulted from the application of the ordinary rule. (10 Encyc. Pl. & Pr. 173.) Where there is evidence that would support a finding of self-defense it has been held that the instructions should cover that feature of the case, notwithstanding the defendant's testimony that he did not do the act from which the death resulted. (*Reed v. The State,* 141 Ind. 116; *Morris v. Commonwealth* [Ky. 1898] 46 S. W. 491; *Gatliff v. Commonwealth* [Ky. 1908] 107 S. W. 739.) In the Indiana case cited the defendant not only testified that he did not throw the stone that caused the death for which he was prosecuted; he also ob-

jected to instructions being submitted on the theory of self-defense. The court said:

"In view of the fact, therefore, that appellant in his testimony to the jury testified to some matters . . . which might have given color, or tended to make it appear to the jurors in the event they believed that appellant did cast the fatal stone, that he was justified in so doing, under the belief, upon his part, that the deceased intended to inflict upon him bodily harm, we can not hold, in a legal sense, that the instructions thus assailed were wholly irrelevant and inapplicable to the evidence. It was the duty of the court, under the statute, at least, to state to the jury all matters of law for their information in arriving at a verdict. If there were any facts or circumstances in the case, although quite meager, to which the instructions might, upon any view, be pertinent, provided they were correct in the statement of the law, it would not be error for the court to give them, although they were so given to the jury over the protest and disclaimer of appellant's counsel. A judge, in his instructions to a jury, has a duty to perform, in the discharge of which he can not be circumscribed or controlled by the protest or disclaimer of a litigant." (Page 122.)

In the Morris case it was said:

"From the testimony in this record Philpot's assault upon Bundy was without excuse or justification. From the testimony of the appellant and his witnesses the defendant had a right to shoot Philpot in his own necessary defense. Defendant's testimony, to the effect that he did not shoot Philpot, does not deprive him of the right to have the jury instructed upon the question of his right to shoot Philpot in defense of Bundy. The jury might have believed the testimony introduced by the commonwealth that the appellant did fire the shot, and they might have further believed from the testimony in the case that he shot to save the life of Bundy, or in his own self-defense." (46 S. W. 491.)

And in the Gatliff case:

"Now, it may have been that the defendant made a false statement as to the accidental discharge of the pistol, being moved thereto by fear of the result of the trial, and believing that his chances of acquittal were

The State v. Jackett.

more favorable by saying that the pistol was acci-
dentally discharged than by testifying that he killed
the deceased in self-defense.   The mere fact that the
accused rested his defense on false or mistaken testi-
mony did not deprive him of any defense which he
might have truthfully made.   It was the duty of the
court to give an instruction upon every phase of the
homicide which had a substantial basis in the evidence,
leaving to the jury to say, if conflicting theories were
presented, which was true."  (107 S. W. 740.)

In *The State v. Stephens,* 96 Mo. 637, the court held
that although the defendant testified that the killing
was accidental, and there was no evidence whatever
tending to support the theory of self-defense, still that
issue should have been submitted to the jury.   This de-
cision was manifestly wrong, and was overruled in *The
State v. Smith,* 114 Mo. 406.

In the present case it is plain that the evidence re-
quired the question whether Jackett acted in self-de-
fense to be left to the jury, unless his denial of the
shooting eliminated that issue.   If the evidence tending
to justify the killing had been clear and convincing
there would be little difficulty in saying that the jury
should pass upon that feature of the case, notwith-
standing his protest that he fired no shot.   Suppose, by
way of illustration, a bystander had seen the fatal shot
fired, while the pistol was pointed upward at an angle
of forty-five degrees, and that marks on a building had
been found indicating that the bullet had been deflected
downward : under such circumstances the theory that
the defendant fired merely to frighten away his assail-
ants, the death of one of them resulting from an acci-
dent, would have presented itself so insistently that
the defendant's denial of the shooting obviously should
not prevent the jury from acting on the real facts.
Whether an affirmative defense which is inconsistent
with a part of the defendant's own testimony should
be submitted to the jury can not depend upon the

amount of proof back of it, so that it is supported by some substantial evidence.

Aside from his denial of the actual shooting the defendant did nothing to forfeit the right to have the jury pass upon the question whether it was justifiable or excusable. Instructions were asked in' his behalf bearing upon that issue, and while they may not have been framed with entire accuracy (as to which see *The State v. Countryman*, 57 Kan. 815, 827) they served to show an intention to insist upon that ground of defense.

The judgment is reversed and the cause remanded for a new trial.