No. 48,972

STATE OF KANSAS, *Appellee,* v. WILLIE L. CATES, *Appellant.*

(576 P.2d 657)

Opinion filed April 1, 1978.

*Dale V. Slape,* of Sherwood & Slape, of Wichita, argued the cause and was on the brief for the appellant.

*Harold T. Pickler,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *Stuart W. Gribble,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Willie L. Cates was charged with premeditated and felony murder (K.S.A. 21-3401), and unlawful possession of a firearm after conviction of a felony (K.S.A. 21-4204[1][*b*]). A jury found him guilty of murder in the second degree (K.S.A. 21-3402) and acquitted him of the other charges. He appeals and raises four points of alleged error. Two of the points concern the alleged existence of evidence at the trial which would require the trial judge to give instructions on either involuntary manslaughter or voluntary manslaughter or both.

"In a criminal prosecution where the offense charged may include some lesser offense it is the duty of the trial court, under the provisions of K.S.A. 1972 Supp. 21-3107(3), to instruct the jury, not only as to the offense charged but as to all lesser offenses of which the accused might be found guilty under the information and upon the evidence adduced." (*State v. Warbritton,* 211 Kan. 506, Syl. ¶ 1, 506 P.2d 1152 [1973]. See also *State v. Weyer,* 210 Kan. 721, Syl. ¶ 1, 504 P.2d 178 [1972].)

The evidence at the trial indicates a feud developed between the members and friends of two families in Wichita, which feud lasted four days and culminated in the death of Mike Fair on April 5, 1976, from a gunshot wound to the head. The two groups which carried on this vendetta will be referred to as the Cates

group and the Fair group. The feud arose when a member of the Fair group attempted to collect $10.00 owed by a member of the Cates group. A profane argument erupted and ended in a stand-off. The following morning at 1:00 a.m. some members of the Fair group proceeded to the home of one of the members of the Cates group, threw a rock on the porch and challenged those inside to a fight. Willie Cates came out on the porch but declined the invitation and retreated inside the house as shots were fired.

After Willie Cates was unsuccessful in two different attempts at borrowing a handgun, he proceeded to make what is referred to as a "zip gun". The homemade "zip gun" was fashioned by the defendant and a friend from a short piece of pipe, a piece of wood, two springs and a nail. It was capable of firing a .22 long rifle cartridge. Thereafter the defendant placed the homemade gun in a paper sack and carried it with him wherever he went.

The day after the Fairs challenged the defendant to a fight, the defendant located a blue Rambler automobile owned by a member of the Fair group. In retaliation for the challenge by the Fairs, the defendant proceeded to break the car windows. That evening Mike Fair, the murder victim, and his brother assaulted a member of the Cates group in retaliation for the damage to the blue Rambler automobile and, in a later incident, threatened other members of the Cates group.

The next morning at 1:30 a.m. a fire bomb was thrown at the home of one of the Cates group by the brother of Mike Fair, and windows were broken in a Volkswagen parked near the house that was fire-bombed.

Later that morning the defendant was advised of these recent events and he decided to go to the Service Auto Glass Company where Eugene Fair, the brother of the victim, worked. Four members of the Cates group, two men and two women, drove to the Service Auto Glass Company. They noticed a car owned by Barbara Fair parked in the parking lot east of the Service Auto Glass Company. They parked their car behind the Fair car.

We will recite defendant's version of the events that transpired. Defendant got out of the car and picked up the homemade "zip gun" which was in the paper sack lying in his lap. He approached the Fair car while carrying the paper sack in his left hand. When he reached the car he saw Mrs. Fair in the back seat with a man. He opened the backdoor of the car with his right hand. Mrs. Fair

reached for her purse, and the defendant told her to get away from her purse. She complied. He believed she was reaching for a gun.

The defendant then directed his attention to the victim, Mike Fair. Mike Fair was seated in the front seat. He was in the act of retrieving a small-caliber pistol from under the seat. Mike Fair pointed a pistol at the defendant. In self-defense the defendant switched the paper sack containing the "zip gun" to his right hand, lunged inside the back seat and swung at Fair with his right hand. At the same time he ducked behind the back of the seat. The "zip gun" which was in the defendant's right hand struck the victim in the face and the gun discharged. Defendant testified he was holding the paper sack with the gun inside and that his hand was not inside the sack where the firing mechanism was located. He testified the discharge of the "zip gun" and the killing of Mike Fair were unintentional.

Considering this testimony we must first determine if the trial judge was required to give an instruction on involuntary manslaughter.

"Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety." (K.S.A. 21-3404.)

Taking the defendant's testimony at face value the act of striking and killing the victim was done unintentionally and without malice. To constitute involuntary manslaughter under the statute the killing must have occurred in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act in an unlawful or wanton manner.

At this point it is well to consider the dilemma facing the trial judge when he gave the instructions in the present case. The defendant was charged not only with murder but also with unlawful possesion of a firearm with a barrel less than twelve (12) inches long. There was evidence that defendant had previously been found guilty of a felony in Sedgwick County, and there was considerable evidence bearing on the size of the gun barrel. There was testimony from which a jury might well have found the defendant guilty of possessing the prohibited gun with a barrel less than twelve inches in length, a felony. This gun was the

instrument used which resulted in Mike Fair's death. As the case turned out defendant was acquitted of the firearms charge. The jury, no doubt, found the barrel of the gun was in excess of twelve inches. Therefore, the possession of the gun by defendant did not amount to a felony in the minds of the jurors.

Adding to the judge's dilemma we find the following discussion on the record concerning the giving of the instruction on involuntary manslaughter.

"MR. REGIER: Other than that I have no objection to the instructions.

"THE COURT: Defendant Cates.

"MR. MOORE: We have no objection, Your Honor.

"THE COURT: The state of Kansas.

"MR. RUMSEY: There are two things that concern me about the instructions, frankly. I think that there ought to be a lesser included offense for Involuntary Manslaughter. And my concern about having that, I think, is the Supreme Court of our State's ruling in the State of Kansas versus Gregory at 218 Kansas 180. I don't agree with the court's ruling, the Supreme Court's ruling in that case but it seems to be something that, according to that rule, we ought to do here.

"I know that the Court currently feels that the evidence does not support an Involuntary Manslaughter theory. And I agree with the Court's ruling here, but this Supreme Court seems to be off on some other kind of theory in that case. I think we have to have that.

"I also understand that neither defendant—neither attorney for the defendant wants to have Involuntary Manslaughter and they feel that there is no evidence to support an instruction on that verdict.

"I also think that the law of our state requires when someone is charged with Unlawful Possession of a Firearm that there be an instruction about possession. I know that the argument can be made that because the evidence is undisputed that he possessed it that there's no need to instruct about possession.

"But, again, I know that our court has ruled, our Supreme Court has ruled that the possession instruction is a necessary instruction for that kind of crime.

"THE COURT: Does either defense counsel want to be heard before the Court rules?

"MR. MOORE: I think Mr. Rumsey, Your Honor, has fairly well outlined our thinking on it, and that is, there is simply no evidence of any kind which would support an instruction to Involuntary Manslaughter."

There can be little doubt under K.S.A. 21-3107(3) as construed in *State v. Warbritton,* supra, and *State v. Weyer,* supra, the court must evaluate the evidence and determine if an instruction on involuntary manslaughter should be given regardless of the wishes of the defendant and the prosecution. In *State v. Seelke,* 221 Kan. 672, 561 P.2d 869 (1977), it is pointed out:

"A trial court's duty under K.S.A. 21-3107 to instruct on a lesser degree of a crime arises only where there is evidence upon which the accused might reasonably be convicted of the lesser offense." (Syl. ¶ 2.)

So let us consider the requirements of the involuntary manslaughter statute (K.S.A. 21-3404) in light of the evidence at the trial. Was there evidence that the killing resulted from the commission of an unlawful act not amounting to a felony? Present counsel for defendant cites an ordinance of the city of Wichita which he argues made any discharge of a firearm in the city a misdemeanor. However, at no time in the trial of the case was such a theory presented to the trial court, and the ordinance referred to is not set out in the record or the briefs. Under the rules of evidence, specifically K.S.A. 60-409, judicial notice of a duly enacted ordinance shall be taken "if a party requests it and (1) furnishes the judge sufficient information to enable him or her properly to comply with the request and (2) has given each adverse party such notice as the judge may require to enable the adverse party to prepare to meet the request." This statute was not complied with. Therefore, we are not disposed to find the defendant could have been guilty of an unlawful act by violating this city ordinance. The ordinance was not called to the attention of the trial court and no request was made to take judicial notice of it. In addition, under the firearms charge, the evidence would support a determination that the possession of the gun by the defendant constituted a felony.

So our next inquiry is—was the alleged unintentional killing "in the commission of a lawful act in an unlawful or wanton manner"? Taking defendant's testimony at face value the defendant acted in self-defense when confronted with a gun held in the hand of a person who had previously threatened to kill if and when he found defendant. In *State v. Gregory,* 218 Kan. 180, 542 P.2d 1051 (1975), we hold:

"The use of excessive force may be found to be an 'unlawful manner' of committing the 'lawful act' of self-defense, and thereby supply an element of involuntary manslaughter." (Syl. ¶ 5.)

The court gave an instruction on self-defense in this case. Self-defense is recognized by statute.

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force." (K.S.A. 21-3211.)

A defendant may use the degree of force which reasonably

appears to be necessary to repel an attack and is justified in the use of deadly force to repel deadly force. (*State v. Blocker,* 211 Kan. 185, 505 P.2d 1099 [1973]; *State v. Stokes,* 215 Kan. 5, 523 P.2d 364 [1974].) Under the facts as testified to by defendant there is nothing in the actions of defendant which would bring the case within the excessive force rationale of *State v. Gregory,* supra. If the jury believed his story the homicide was justifiable because he acted in self-defense to repel a deadly force. The trial court did not err in failing to instruct the jury on involuntary manslaughter.

We turn to appellant's next point concerning the failure of the court to instruct on voluntary manslaughter. No such instruction was requested. K.S.A. 21-3403 provides:

"Voluntary manslaughter is the unlawful killing of a human being, without malice, which is done intentionally upon a sudden quarrel or in the heat of passion."

In the case before the court there is simply no evidence upon which the jury could have based a conviction for voluntary manslaughter. The evidence from the defendant was that the killing was done unintentionally in an effort to defend himself. The defendant further testified that he approached the vehicle with the intention of talking to Barbara Fair and not in an angry or upset manner. There was no testimony to indicate that any argument or quarrel took place in the parking lot. No one had argued with the defendant. All of the persons in the victim's automobile fully complied with the defendant's commands. In *State v. Stafford,* 213 Kan. 152, 515 P.2d 769 (1973), opinion modified and rehearing denied at 213 Kan. 585, 518 P.2d 136 (1974), the court held even though there was some evidence of prior quarreling and of a blow being struck by the decedent, there was insufficient provocation to reduce a second degree murder charge to voluntary manslaughter.

In *State v. Coop,* 223 Kan. 302, 573 P.2d 1017 (1978), the terms used in K.S.A. 21-3403 are explained as follows:

" 'Heat of passion' includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror. It must be of such a degree as would cause an ordinary man to act on impulse without reflection." (Syl. ¶ 1.)

" 'Sudden quarrel' is one form of provocation for 'heat of passion' and is not separate and apart from 'heat of passion.' " (Syl. ¶ 3.)

In the present case there was no evidence of a quarrel between

the defendant and the victim in the parking lot. The victim said nothing. The defendant is alleged to have said three words to the victim, "Don't do it." The vendetta carried on between the Cates group and the Fair group during the three preceding days is not what is contemplated in the statute as sufficient provocation to give rise to heat of passion. It was too remote and not of such a degree as would cause an ordinary man to act on impulse without reflection. It was not error for the trial court to fail to give an instruction on voluntary manslaughter.

The appellant contends it was error under K.S.A. 22-2616 for the trial court to overrule his motion for change of venue because of pretrial publicity. Appellant received publicity as the father of Siamese twins born in November, 1975. The twins were successfully separated in January, 1976. Thereafter a court battle arose over the custody of the twins and appellant apparently abducted one of the twins and was quoted in the news media as saying he would fight for custody. The custody action was widely publicized and the news media carried some stories in which the mother was quoted as accusing appellant of beating her. All of this publicity had nothing to do with the present trial and some of it was favorable to the appellant.

There were several additional news articles in April after the killing of Mike Fair. We have read these exhibits and they are objective in nature. The trial occurred in August, four months later. Nine affidavits were filed with a motion for change of venue stating the affiants believed it was impossible for appellant to receive a fair trial in Wichita because of the publicity. Half of these affidavits were signed by members of the Cates group who figured prominently in the feud.

In ruling on the motion for change of venue the judge noted that appellant was entitled to exercise twelve peremptory challenges in selecting a jury but he exercised only six and waived the balance. The jurors who were selected to try the case acquitted the appellant of murder in the first degree and of felony possession of a firearm. The trial court was reasonably certain that appellant did receive a fair trial. There is no showing in the record of prejudice, and under the authorities set out at pp. 279 and 280 of *State v. Sanders,* 223 Kan. 273, 574 P.2d 559 (1977), we cannot say the trial court abused its discretion in refusing a change of venue.

Appellant's fourth and final point is that the trial court erred in not sustaining his motion for judgment of acquittal under K.S.A. 22-3419. It would serve no useful purpose to review the inconsistencies in the testimony which appellant asserts. These were for the jury to resolve. The rules governing the determination of this question were fully set out in *State v. Wilson & Wentworth,* 221 Kan. 359, 362, 559 P.2d 374 (1977). There is sufficient evidence to support the verdict.

The judgment is affirmed.