No. 66,515

STATE OF KANSAS, *Appellee*, v. JAMES RUTTER, *Appellant.*

(850 P.2d 899)

Opinion filed April 16, 1993.

*Jessica R. Kunen,* chief appellate defender, argued the cause and was on the brief for appellant.

*Jerome A. Gorman,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, James Rutter, appeals his conviction of second-degree murder. He claims that the trial court erred by rejecting his request for an instruction that he acted in defense of another and by failing to instruct on the lesser included offense of involuntary manslaughter. We affirm.

On the afternoon of July 11, 1990, defendant was drinking beer at the home of a friend, Larry Jenkins. As the evening progressed, Dale Harris, Mike Collins, and John Walters joined them. They left at least once to get more beer.

Much of the discussion focused on a fight in which Jenkins and Collins had been involved the night before. It was obvious to all that Collins had been beaten because both of his eyes were

black and his nose was bleeding. Bill Johnson was one of the people who had beaten Collins. Late in the evening of July 11, the men decided to go to an area referred to as "the cliffs" to see if they could find the men who had fought with Collins and Jenkins the night before. The cliffs is a gravel parking area along a secluded road that leads to the Inland caves in Kansas City, Kansas.

Defendant and Collins left for the cliffs in Rutter's car; Harris, Jenkins, and Walters went in two other cars. The defendant carried a .22 caliber rifle in the trunk of his car. He testified that he used the rifle for hunting and fishing. Harris carried a .38 caliber pistol in his back pocket.

Another group of people, including Bill Johnson, had gathered at the cliffs earlier that same evening. They were listening to music and talking; some were drinking alcohol. For the most part, this group was composed of recent high school graduates who were considerably younger than the men in defendant's group. Defendant's group arrived at the cliffs at about 10:30 p.m. and confronted Johnson's group. Harris, Jenkins, and Collins were armed with clubs, and Harris still carried his pistol. The people in Johnson's group were not armed at the time defendant's group arrived. There was conflicting testimony about whether they armed themselves with sticks after the fighting started.

Bill Johnson recognized two of the men in defendant's group and, fearing retribution for the previous night's fight, tried to hide. Someone in defendant's group (presumably Dale Harris) waved a pistol around, asked where Bill Johnson was, and told everybody not to move. Johnson was spotted, and Harris threatened to shoot Johnson when he tried to run. Sean Ruis, also present when defendant's group arrived, also tried to leave. Jenkins hit him twice in the arm with a club. Harris then hit Ruis in the head with a club. It is not clear, however, who struck the first blow of the fight. There was testimony that one of Johnson's group began the fighting with a member of defendant's group. In addition, Harris testified that someone pushed him when he got out of his car.

The fighting escalated, and defendant went to Jenkins' truck to get "something to fight with." He then heard gunshots and decided to get his rifle. When he returned to the fight, he saw

that Alvin Johnson had Collins pinned on the ground and was hitting him. (Alvin Johnson is not related to Bill Johnson.) Defendant testified that he tried to break up the fight by firing two shots into the air. He testified that after he fired the shots, he turned to go back to his car and heard Collins yell for help. He testified that he then turned around and shot Alvin Johnson. The bullet pierced Johnson's heart, and he died as a result of the wound.

Defendant testified that he was about 15 feet away from Johnson when he shot at Johnson's leg or buttocks, intending only to save Collins from a possibly fatal beating. One witness for the State testified that defendant was standing several feet from Johnson when he fired, but that the end of the gun was only a few feet away from Johnson. Other witnesses testified that defendant was within one to one and one-half feet of Johnson when he pulled the trigger. The autopsy report and accompanying expert testimony established that Johnson's wound was a contact wound based upon the presence of powder burns.

Based upon his testimony that he shot Johnson to keep Johnson from beating Collins to death, defendant requested an instruction on defense of another. He also requested an instruction on involuntary manslaughter based upon his contention that he may have used excessive force in defense of Collins, which would amount to committing a lawful act (defending another) in an unlawful manner (with excessive force). The court rejected both requested instructions and instructed the jury on second-degree murder and on the lesser included offense of voluntary manslaughter.

## Defense of Another
### A. K.S.A. 21-3211

K.S.A. 21-3211 provides that:

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force."

The defendant claims that the trial court erred because there was conflicting evidence on which group was the aggressor and because there was evidence to establish that defendant was not

the aggressor. Thus, according to his contention, it was for the jury to decide under K.S.A. 21-3211 if the defendant was "justified in the use of force against an aggressor." The defendant also contends that there was evidence supporting his belief that the force used was necessary to defend his friend, requiring the court to give his requested instruction.

Before examining the evidence that defendant claims obligates the trial court to instruct on defense of another, it is helpful to discuss what measuring stick the trial court must use in deciding whether it has a duty to instruct and, thus, what standard an appellate court must apply in deciding whether the trial court has fulfilled its duty. It is clearly established under Kansas law that "[w]here the trial court refuses to give an instruction on lesser included offenses or on self-defense [defense of another], the evidence supporting such instruction must be viewed on appeal in the light most favorable to the defendant." *State v. Hill,* 242 Kan. 68, Syl. ¶ 2, 744 P.2d 1228 (1987). The defendant relies upon *State v. Hill* in contending that the trial court has a duty to instruct on self-defense (defense of another) even if the evidence is slight and consists solely of the defendant's own testimony. Yet, there has always been a requirement that there be "evidence tending to establish self-defense." *State v. Hill,* 242 Kan. at 78.

In support of his argument that any evidence is sufficient to raise a duty on the part of the trial court to instruct on self-defense, the defendant relies upon the early case of *State v. Smith,* 161 Kan. 230, 167 P.2d 594 (1946). *Smith* required an instruction on self-defense even though the defendant denied she had committed the act that resulted in death and where no such instruction had been requested. *Smith* held that even with a denial by the defendant and no request for such an instruction, the trial court, based on the evidence, may be under an affirmative duty to instruct on self-defense. *Smith* begins its discussion with the trial court's duty to instruct on lesser offenses:

"[I]t is now familiar law in this state that it requires the trial court to charge the jury on all matters which are necessary for its information in arriving at a verdict and that in this connection in prosecutions for homicide it is that court's duty to instruct not only as to the offense charged but as to the lesser offenses of which the accused might be found guilty under the

information and upon the evidence adduced even though no request for an instruction on such lesser offense was made. [Citations omitted.]" 161 Kan. at 235-36.

*Smith* concluded that the trial court is duty-bound to instruct on defenses raised by the evidence:

"Less has been said on the question of whether an instruction on self defense is required under such section when that issue is raised by the evidence in a given case. However, it too has been determined. In the case of *State v. Jackett,* 81 Kan. 168, 169, 179, 105 Pac. 689, where, as here, the defense was the defendant had not committed the homicide with which he was charged, we held:

'In a prosecution for homicide, *where there is substantial evidence tending to show that the accused acted in self-defense,* the fact that he denies having committed the act which caused the death is not necessarily a ground for refusing to submit to the jury the question whether the killing was justifiable.' [Emphasis added.] Syl.

"And said:

'. . . *Where there is evidence that would support a finding of self-defense* it has been held that the instructions should cover that feature of the case, notwithstanding the defendant's testimony that he did not do the act from which the death resulted. [Citations omitted.]

'. . . Whether an affirmative defense which is inconsistent with a part of the defendant's own testimony should be submitted to the jury can not depend upon the amount of proof back of it, [but] *that it is supported by some substantial evidence.'* (pp. 171, 173)." (Emphasis added.) 161 Kan. at 236-37.

*Smith* further concludes that:

"In those cases where self defense is <u>invoked by the proof</u> we conclude it is the duty of the court to charge the jury on that issue irrespective of whether there has been a request for an instruction, regardless of whether counsel has been called upon and failed to formulate a theory on which it could be given, and notwithstanding such counsel has stated he believes its submission rests in the court's discretion.

"Our conclusion is not unsupported by the authorities. In 41 C.J.S. 163, 164, 165, § 375, it is said:

'As a general rule, where self-defense is involved and there is *any evidence,* although slight, *to establish it,* it is proper for, as well as the duty of, the court to instruct the jury fully and clearly on all phases of the law of self-defense *that are warranted by the evidence,* even though such defense is supported only by accused's own testimony, or accused denies the killing or participation in the homicide; and it has also been held that such an instruction is proper even though no issue of self-defense is raised. *Where such an instruction is necessary and proper under the issues and evidence*

*in the case, a failure or refusal to give it constitutes error . . . .'"* (Emphasis added.) 161 Kan. at 237.

The duty of the trial court to instruct under *Smith* is predicated upon a determination by the trial court that there is "substantial evidence tending to show that the accused acted in self-defense," or "evidence that would support a finding of self-defense" or that "it is supported by some substantial evidence," or "there is any evidence, although slight, to establish it."

In other words, the duty of the trial court to instruct on affirmative defenses, like the duty to instruct on lesser included offenses, arises when evidence exists that tends to establish the affirmative defense. We have said that a trial court is not required to instruct the jury on a lesser included offense if there is not evidence from which a rational factfinder could find the defendant guilty of the lesser offense. *State v. Dixon*, 252 Kan. 39, Syl. ¶ 1, 843 P.2d 182 (1992); *State v. Lumbrera*, 252 Kan. 54, Syl. ¶ 10, 845 P.2d 609 (1992); *State v. Stallings*, 246 Kan. 642, Syl. ¶ 3, 792 P.2d 1013 (1990); see *Hill*, 242 Kan. at 73-74. That same standard applies to the question of whether the trial court has a duty to instruct on the defense of self-defense or defense of another.

The question that we must answer is whether, when the evidence is viewed in the light most favorable to the defendant, there is sufficient evidence from which a rational factfinder could find that the defendant acted in self-defense or in defense of another. If the answer to this question is "yes," then the trial court had a duty to give an instruction on self-defense or defense of another.

Thus, although the trial court is required to instruct the jury on self-defense even if the evidence is slight and consists only of the defendant's own testimony, there must be sufficient evidence from which a rational factfinder could find that the defendant acted in self-defense or in defense of another. The standard has never been that the mere statement of a defendant that he acted in self-defense or defense of another is sufficient to invoke that duty to instruct on the part of the trial court. The elements of self-defense and defense of another are statutory and there must be sufficient evidence of each of the elements of self-defense or defense of another before a duty to instruct arises.

In determining the availability of a self-defense or defense-of-another instruction under K.S.A. 21-3211, we have applied a two-pronged test. The first prong is subjective—did the defendant sincerely believe it was necessary to kill in order to defend himself or another? The second prong is objective—was the defendant's belief reasonable? *State v. Jordan*, 250 Kan. 180, 185, 825 P.2d 157 (1992); *State v. Childers*, 222 Kan. 32, 48, 563 P.2d 999 (1977). The defendant, under the second prong, must "show the existence of some facts that would support such a belief." *State v. Burgess*, 245 Kan. 481, Syl. ¶ 5, 781 P.2d 694 (1989).

In the present case, defendant was part of a group that went to the cliffs to settle a score concerning the fight in which Collins was injured the night before. Although there was some testimony that they just went to talk, the evidence was uncontroverted that they came to the cliffs armed and ready to do battle. Jenkins, Harris, and Collins were armed with clubs; Harris carried a pistol on his person; defendant carried a rifle in his car. Defendant acknowledged that they went as a group to the cliffs "to do something about what happened to Larry [Jenkins] and Mike Collins the night before" and that he would fight if necessary. Upon arrival, defendant, Collins, and members of defendant's group confronted the other group, provoking the fight that resulted in Alvin Johnson's death. Once provoked, the fight immediately escalated, and shots were fired.

The defendant further claims that he was not an aggressor because in the beginning he was only an observer without any weapon. According to the defendant, it was only after he was threatened with a club that he left to get a weapon. The defendant's actions speak louder than his words. After he had escaped from danger, he returned and actively joined an armed group with the avowed purpose of settling a score on behalf of a friend. Even when viewed in the light most favorable to the defendant, the evidence demonstrates that he was the aggressor and therefore not entitled to an instruction under K.S.A. 21-3211. There was not sufficient evidence from which a rational factfinder could have found that the defendant acted in defense of another under K.S.A. 21-3211. The trial court therefore had no duty to instruct under K.S.A. 21-3211.

## B. <u>K.S.A. 21-3214(3)(a)</u>

K.S.A. 21-3214 provides:

"The justification described in sections 21-3211, 21-3212, and 21-3213, is not available to a person who:

. . . .

(3) Otherwise initially provokes the use of force against himself or another, unless:

(a) He has reasonable ground to believe that he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

(b) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force."

In the alternative, the defendant argues that there was evidence to establish he had reasonable grounds to believe his friend, Collins, was in imminent danger of death and that he had exhausted every reasonable means to extricate his friend other than the use of deadly force or that he withdrew from physical contact. Thus, according to his contention, the trial court had a duty to instruct under K.S.A. 21-3214(3).

With respect to the first requirement of K.S.A. 21-3214(3)(a), a two-pronged test is appropriate. There must be evidence that defendant actually believed that his friend was in imminent danger of death or great bodily harm and there must be evidence of facts to permit a jury to conclude that such belief was reasonable. In addition, however, there must be evidence from which a rational factfinder could conclude that the defendant exhausted every reasonable means to escape (or, in this case, to help his friend escape) such danger other than use of deadly force. We conclude that there was not sufficient evidence in the record from which a rational factfinder could conclude that the defendant exhausted every reasonable means to extricate his friend from danger other than the use of deadly force.

According to the defendant, upon being confronted with a club, he returned to Jenkins' truck to get a weapon. He heard shots, retrieved his rifle from his own vehicle, and returned to the fight. He testified that upon his return, he saw Alvin Johnson beating Mike Collins. Defendant stated, "I fired two shots in the air to

break it up. Then a car came by and I fired two shots at them." According to the defendant, he returned to his car and "Mike hollered something or other. I turned around and fired a shot toward the man's leg." He testified that before leaving, he did not see Mike Collins and was at least 15 feet away from the fight when he fired the shot. He did not return to rescue Collins, but Collins soon showed up at his car, and the two drove off.

The record is silent on what actions the defendant took, other than shooting twice in the air, to stop the fighting between Collins and Alvin Johnson. Although the evidence arguably may provide reasonable grounds for the defendant to have believed that his friend was in imminent danger of death or great bodily harm, there is no evidence to support his contention that he exhausted every reasonable means to avoid such danger other than by the use of force that was likely to cause death or great bodily harm.

The defendant took no specific action to break up the fight, other than firing two shots in the air, before firing the fatal shot. We are mindful that Johnson was a large young man who appeared to be getting the better of Collins in the fist fight. We are mindful that Collins had sustained injuries the night before. On the facts of this case, however, the evidence does not support a finding that defendant exhausted every reasonable means to avoid the need for deadly force. There was other gunfire and a great deal of commotion in the area at the time. Although defendant testified that he "was trying to break it up, get [Alvin] off him," neither he nor any other witness testified about any specific action he took other than firing two shots. There was no evidence that defendant even spoke to Johnson before shooting him. According to his own testimony, the defendant did not even return to rescue Collins, but shot at Johnson from 15 feet away and then turned to leave, firing his weapon at cars along the way. Collins freed himself, came to the defendant's car, and got in defendant's car before both of them left.

Under these circumstances, there is not sufficient evidence from which a rational factfinder could conclude that the defendant acted in defense of another under K.S.A. 21-3214(3)(a) because the evidence clearly demonstrated defendant did not exhaust every reasonable means other than the use of deadly force.

## C. K.S.A. 21-3214(3)(b)

Subsection (3)(b) seems uniquely suited to self-defense rather than defense of another. K.S.A. 21-3214(3)(b) resurrects self-defense as a defense because the defendant, based on an actual and clearly communicated withdrawal, loses the status of aggressor. There are some instances in which K.S.A. 21-3214(3)(b) may apply to the defense of another. When, for instance, the evidence establishes that defendant is acting in concert with the other or when the evidence shows that defendant observed the "withdrawal" of the other, K.S.A. 21-3214(3)(b) may apply.

However, in this particular case, it is difficult to apply subsection (3)(b) to the defense of another. The defendant and Collins were not joined in the use of force against Alvin Johnson, and defendant did not observe any withdrawal by Collins. While the defendant may claim to have withdrawn, his withdrawal does not fit as a defense under K.S.A. 21-3214(3)(b). We nevertheless discuss withdrawal because on appeal defendant claims he withdrew and because such a discussion bears upon defendant's aggressor status.

With respect to K.S.A. 21-3214(3)(b), the evidence of record fails to support a finding that defendant withdrew, and there is no evidence that the defendant communicated any desire to withdraw and stop the use of force. See *State v. Meyers*, 245 Kan. 471, 476-78, 781 P.2d 700 (1989). After he fired the two shots in the air, the defendant did not see what was going on between Collins and Johnson but appeared to be more interested in firing at passing cars. Moreover, when he made it to his car after shooting Johnson, he hid behind his car and continued to shoot at other cars. The defendant testified that he "fired two shots in the air to break it up. Then a car came by and I fired two shots at them." Defendant testified that he then returned to his car and "Mike hollered something or other. I turned around and I fired a shot towards the man's leg." He then hid behind a car and when another car came by, he "fired a few more rounds back at the tires." The defendant was involved in the fight and never, according to his own testimony, ceased to use his weapon. Defendant's own testimony established that he was firing his weapon at others both immediately before and after he fired the

shot that killed Alvin Johnson. We conclude, under K.S.A. 21-3214(3)(b), that there was no evidence of a good faith withdrawal or of a desire to withdraw.

The evidence of defendant's actions throughout the time he claims to have withdrawn clearly demonstrates that he continued as an aggressor. His continued use of the weapon indicates no desire to withdraw and terminate the use of force. Under these circumstances, because both Collins and the defendant were aggressors, the trial court properly denied the defendant's request for an instruction under 21-3214(3)(b).

At best for defendant, the fight may be described as "mutual combat." Even then, however, defendant is not entitled to an instruction on defense of another because he willingly provoked the combat. In *State v. Meyers*, 245 Kan. at 478, we said:

"The general rule is that the doctrine of self-defense [defense of another] cannot be invoked to excuse a killing done in mutual combat willingly entered into. The individual who willingly provoked the mutual combat is not justified or excused in taking life unless he has withdrawn in good faith and communicated that withdrawal, and has done all in his power to avert the necessity of killing. [Citations omitted.]"

Defendant claims that *Meyers* does not apply because in *Meyers*, the defendant, through repeated actions, provoked the attack and, after arming himself with a deadly weapon, lured the victims into a situation where the defendant was required to use deadly force to save his life. Although *Meyers* presents a classic example of a defendant who provoked the combat, the principles set forth in *Meyers* apply in the present case. In the present case, the evidence is clear that defendant was the aggressor. As noted above, there was no evidence that defendant communicated his withdrawal or that he did all in his power to avoid the need to kill.

Defendant contends that this case is controlled by *State v. Cates*, 223 Kan. 724, 576 P.2d 657 (1978). In *Cates*, we held that the trial court did not err in failing to instruct the jury on voluntary and involuntary manslaughter. The trial court instructed the jury on self-defense and the propriety of the self-defense instruction was not at issue in *Cates*. In analyzing whether the court properly refused to instruct on voluntary and involuntary manslaughter, however, we noted that if the jury had believed

Cates' testimony, it could have found that Cates acted in self-defense and did not use excessive force. 223 Kan. at 728-29.

Even if the issues decided in *Cates* were directly on point, *Cates* is factually distinguishable from the case now before this court. The killing in *Cates* occurred after a four-day feud between two groups. During the course of the feud the participants argued, threatened one another, and damaged each other's property. One group fired shots at the defendant. Cates testified that on the morning of the killing, he approached a car occupied by members of the opposing group. He carried in a paper bag a homemade "zip gun," capable of firing one .22 long rifle cartridge. When Cates opened the back door of the car and saw the female occupant reach for her purse, he told her to get away from her purse. She complied. The victim, who was in the front seat, retrieved a gun and pointed it at Cates. Cates testified that to defend himself, he swung the bag containing the zip gun at the victim. The gun discharged and killed the victim. Cates testified that he did not intend to discharge the weapon or to kill the victim. 223 Kan. at 724-26. Cates testified that he went to the car to talk to one of its occupants and that he did not behave in an angry or upset manner. In *Cates*, there was no evidence that any argument or quarrel occurred at the time and place of the shooting. The woman in the car complied with Cates' commands, and no one argued with Cates. 223 Kan. at 729.

In contrast, it is undisputed here that defendant's group went to the cliffs expecting and prepared for a fight. Although there was some testimony that they went to talk, the evidence was uncontroverted that defendant's group was armed and that it behaved in a hostile and threatening manner as soon as it arrived at the cliffs. Someone in defendant's group verbally threatened Johnson's group; someone in defendant's group waved a gun around and threatened to shoot; two members of defendant's group struck Sean Ruis with clubs when Ruis tried to leave. Defendant's group's behavior was markedly different from Cates' behavior at the time and place of the shooting. Defendant knew the purpose of the trip when he got in his car and drove to the cliffs, and he chose to participate. He knew the other members of his group were armed when they arrived at the cliffs. Defendant observed the initial violent confrontation. *Cates* presents an

example of self-defense; the present case presents an example of aggression and provocation. *Cates* does not control the holding in this case.

Defendant was an aggressor who provoked the use of force against himself or another. The evidence was not sufficient to support a finding that defendant exhausted every reasonable means to avoid the need for deadly force or that defendant withdrew. Accordingly, defendant was not entitled to a defense of another instruction.

### Involuntary Manslaughter

Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the wanton commission of an unlawful act not amounting to a felony, or in the commission of a lawful act in an unlawful or wanton manner. See K.S.A. 21-3404; *State v. Burnison*, 247 Kan. 19, 27-28, 795 P.2d 32 (1990); *State v. Gregory*, 218 Kan. 180, 183, 542 P.2d 1051 (1975). Defendant's claim that he was entitled to an instruction on involuntary manslaughter is based on his claim that he acted lawfully in defense of another, but arguably in an unlawful manner because he used excessive force.

A trial court must instruct the jury on a lesser included offense if there is evidence by which a rational fact finder might find the defendant guilty beyond a reasonable doubt of the lesser included offense. See, *e.g., State v. Lumbrera*, 252 Kan. 54, 71, 845 P.2d 609 (1992); *State v. Dixon*, 252 Kan. 39, 43, 843 P.2d 182 (1992); *State v. Seelke*, 221 Kan. 672, 675, 561 P.2d 869 (1977). Involuntary manslaughter is a lesser degree of murder. See, *e.g., Lumbrera*, 252 Kan. at 72. The "use of excessive force could be found to be an 'unlawful manner' of comitting the lawful act of self-defense, and thus supply that requisite element of involuntary manslaughter." *State v. Gregory*, 218 Kan. at 186.

We have determined, however, that defendant was the aggressor and did not satisfy the provisions of K.S.A. 21-3211 or 21-3214(3). Thus, a rational factfinder could not find beyond a reasonable doubt that defendant performed a lawful act in an unlawful manner. The trial court properly refused to instruct the jury on involuntary manslaughter.

Affirmed.