NOT DESIGNATED FOR PUBLICATION

No. 118,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COLIN EDWARD PRITCHARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed March 15, 2019. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Claiming several instruction errors, Colin Pritchard appeals his conviction for intentional second-degree murder. Our review of the record convinces us that the facts did not support giving the instructions that Pritchard now desires and we find no jury instruction error. We affirm.

*The case begins with a phone call.*

A telephone conversation Pritchard had with an emergency 911 operator is illuminating, not only for what was said but how the words were said. Throughout the call, Pritchard sounded calm, and there were no notes of panic, excitement, or anxiety in his voice. We offer a brief overview of the conversation.

In the early evening of March 18, 2015, Pritchard called 911. The operator asked if he had an emergency, and he replied, "I just killed my wife, so—." The operator asked him three times what he meant. Each time Pritchard replied, "I shot her." The operator asked Pritchard twice where the gun was. He replied he could not hear her, so the operator asked him to turn the volume on his television down so he would be able to hear her. Pritchard stated, "Yeah, I need somebody out here," and he said his wife was in the front room. He also said the shooting was about a minute before he called 911. Pritchard told the operator that the gun was also in the front room. The operator twice asked if his wife was still breathing, to which he replied, "I doubt it."

The operator asked Pritchard to tell her what happened. He responded, "Oh, she's a drunkard, and [unintelligible] she's a mean drunk." The operator asked, "And you just picked up the gun?" Pritchard replied, "Yep." Pritchard revealed he was also in the front room and that he could see his wife. The operator asked him twice to see if his wife was breathing and Pritchard said, "No, she's not breathing." At that time, the operator asked Pritchard about the use of any alcohol or other substances. Pritchard replied, "She's been drunk. That's for damn sure." Pritchard admitted to consuming "a little bit" of alcohol. The operator asked Pritchard what kind of gun he used and where he shot his wife. Pritchard said the gun was a ".380," and he shot her "in the head." Law enforcement officers soon arrived.

2

Pritchard told a detective in a recorded interview that he moved to Topeka the previous month for health reasons and to help his ex-wife. He conveyed they had been married for three years but divorced because of her alcoholism. He told the detective that she was an alcoholic and had a pending DUI in Tennessee. Pritchard said she was a mean drunk, orally abusive towards him, and was sometimes physically abusive. They had lived together since early February and "got along."

The detective asked Pritchard to walk him through the last 24 hours. Pritchard explained that they went to Applebee's around lunchtime, sat at the bar, and each drank a couple of mixed drinks. They then went to Old Chicago to eat lunch, where they sat at the bar and continued to drink mixed drinks. When they left the restaurant sometime around 1:30 p.m., they went back to their apartment and played table games. Cindy continued to drink. Pritchard said he did not drink much more because "I could tell she was getting mean." Pritchard told the detective that Cindy began "bringing up old stuff" and complaining about him not taking her to get her new eyeglasses. Pritchard said he told her he would take her the next day and that he was going to bed. He said Cindy followed him into the bedroom. "And, god damn, I couldn't take it no more."

Pritchard told the detective he was in bed and Cindy was standing on the opposite side of the bed, yelling at him. He could not remember what she was saying. He thought she was calling him names. The detective asked Pritchard what happened next and Pritchard stated, "God, I didn't want to do it."

The autopsy report stated that Cindy died from a gunshot wound to the head, and the manner of death was homicide. Soot was present on and under her skin and on the underlying muscle, bone, and dura, revealing a contact wound. The trajectory of the bullet through the head was from left to right, front to back, and slightly downward. The forensic pathologist testified at trial that there was "blow-back" debris on the barrel of the gun.

Photographs taken during the autopsy showed the head wound came from the bullet and the muzzle of the gun pressed against the skin when the bullet was fired. The contact wound caused a starburst pattern in the skin measuring about 2.5 inches in diameter with the bullet hole at the center of the impact burst. The location of the wound was on the upper left side of the skull about halfway between the left ear and the brow and about halfway down from the crown of the skull towards the left ear. Another photograph showed the trajectory of the bullet through the brain.

A neighbor testified that she heard three or four faint, frightened, female screams coming from the "downstairs area" of her apartment building at around 4 p.m. on the afternoon of the shooting. She heard no loud voices or sounds of an argument or struggle. A friend of Cindy's testified that before Cindy moved to Tennessee, she saw Cindy become orally abusive and demeaning on occasion when she was intoxicated, but she had not seen Cindy very much since she moved to Topeka.

A coworker of Pritchard's testified that he called her several times about his safety with Cindy. Cindy's first ex-husband testified that they were married for 28 years and had seven children together. They divorced largely because of her drinking. He testified that they would argue when she was drunk. She never became violent; she would usually leave. He also kept firearms in the house and Cindy knew where they were located. He testified he never feared Cindy would shoot him.

At trial, Pritchard testified that Cindy took the .380 pistol from between the couch cushions, and he tried to get the gun away from her when it went off. He did not know if he got it away from her before it went off. He testified, "I look at it like [it] was an accident and I didn't want her to be shot. I didn't plan for her to be shot." Pritchard expressed remorse at trying to take the gun away from Cindy, "[I]t's my fault she got shot, you know. Shouldn't have tried to take the gun away."

4

The police found the .380 pistol on a box in the living room. It had five rounds of live ammunition in it. The muzzle appeared to have blood and hair on it. During the investigation, law enforcement located other firearms, ammunition, and everything else related to firearms in the bedroom. There was no sign of a struggle in the apartment and everything was generally neat and clean.

Pritchard proposed jury instructions and a verdict form, which included instructions on two lesser included offenses of intentional second-degree murder and voluntary manslaughter. The district court's jury instructions were the same as those proposed by Pritchard. The jury convicted him of the lesser included offense of intentional second-degree murder.

The court sentenced Pritchard to the aggravated presumptive term of 165 months in prison.

In this appeal, Pritchard raises two issues. First, he contends that the court should have instructed the jury to consider the lesser included offenses of reckless involuntary manslaughter and reckless second-degree murder. He seeks reversal and a remand for a new trial.

Pritchard also challenges the court's instructions that told the jury to consider the charges in the order of the different degrees of homicide by beginning with the greater charge and then if unable to agree on a verdict, move down sequentially to the lesser charges. In his view, the instructions should have told the jury to consider the lesser included offenses simultaneously, rather than sequentially. We will address the issues in that order.

*We find no jury instruction errors.*

Before trial, Pritchard proposed jury instructions that included instructions on the charged crime of first-degree murder, and the lesser included offenses of second-degree murder—intentional, and voluntary manslaughter—knowingly and upon a sudden quarrel. He also proposed a self-defense instruction. During the jury instruction conference, defense counsel asked for another instruction on the lesser included offense of involuntary manslaughter, contending that when Pritchard was reaching for the gun to take it from Cindy, he was reckless.

The court denied Pritchard's requested additional instruction and found that his testimony at trial did not provide factual support for giving an involuntary manslaughter instruction. Pritchard also claims a clear error by the court for its failure to instruct the jury on reckless second-degree murder. We will deal with that claim later.

A brief review of some points of law is helpful at this point. When we consider jury instruction errors, we consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

The trial court must instruct the jury on lesser included offenses where some evidence would reasonably justify a conviction of the lesser included offense. K.S.A. 2017 Supp. 22-3414(3). See *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). This duty to instruct applies even if the evidence is weak or inconclusive. *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014). But this rule applies only when there is sufficient supporting evidence from which a rational fact-finder could find that the events occurred consistent with the defendant's theory. *State v. Rutter*, 252 Kan. 739, Syl. ¶ 2, 850 P.2d 899 (1993).

6

Even when an offense includes a lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2017 Supp. 22-3414(3). See *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014). When evaluating whether a lesser included instruction is factually appropriate in the individual case, the standard of review is "[i]f, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016).

A criminal defendant generally is entitled to an instruction on the law applicable to his or her theory of defense if the instruction would be both legally and factually appropriate. The latter requires that there is sufficient evidence for a rational fact-finder to find for the defendant on that theory. If the defendant requests an instruction at trial, the court must view the evidence in the light most favorable to the defendant. *State v. Dupree*, 304 Kan. 377, 397, 373 P.3d 811 (2016). An instruction on a lesser included offense is not foreclosed because it is inconsistent with either the evidence presented by the defense or the theory advanced by the defense. A defendant may pursue inconsistent defenses. *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016).

We turn now to the elements of involuntary manslaughter. Involuntary manslaughter requires the killing of an individual, done recklessly. See K.S.A. 2017 Supp. 21-5405(a)(1). A defendant acts "recklessly" or is "reckless" when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and that disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. See K.S.A. 2017 Supp. 21-5202(j).

The State argues that Pritchard's claimed conduct was not a gross deviation from the standard of care that a reasonable person would exercise in such a situation. Because Pritchard's testimony claims Cindy was killed accidentally or in self-defense, his actions do not amount to recklessness. We are persuaded by the State's argument. Indeed, the evidence supports no finding of recklessness.

The record reveals that defense counsel argued Pritchard was part of a tragic accident. Pritchard was calm and candid in his 911 call. He said that he had just killed his wife. He said that he shot her, and several times he referred to her drinking as his reason for shooting her. The operator asked him, "And you just picked up the gun?" He replied, "Yep." The operator said, "Where did you shoot her?" Pritchard replied, "In the head."

Similarly, during the interview with the detective, referencing Cindy's drinking and behavior, Pritchard said he could not "take it no more." At the end of the interview, he expressed remorse and said, "God, I didn't want to do it." The apartment did not show signs of a struggle. All of Pritchard's other firearms and accessories were in the bedroom, except for the .380 pistol. The physical evidence of the position and trajectory of the contact wound suggested to law enforcement that Cindy was lower toward the ground when she was shot.

The only evidence in the record of Pritchard's version of events is his own testimony contradicted by his earlier statements in the 911 call and to the detective. Even if the jury found Pritchard's testimony credible, he did not show a gross deviation from the standard of care which a reasonable person would exercise in the situation. To the contrary, he testified, "I look at it like [it] was an accident and I didn't want her to be shot. I didn't plan for her to be shot." He testified that either he did not shoot her or he did not mean to shoot her, "I don't know who had the gun there at the last."

8

Because the record does not establish that Pritchard acted recklessly, we hold the district court did not err when it did not instruct the jury on involuntary manslaughter. We move to Pritchard's next argument.

Pritchard concedes that he did not ask the court to instruct the jury to consider reckless second-degree murder. Even so, he argues for the first time on appeal that the district court's failure to give this instruction was clear error. When a party asserts an instruction error for the first time on appeal, the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018).

In evaluating whether an instruction rises to the level of clear error, the issue of reversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 2017 Supp. 22-3414(3). See *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). When we apply the clear error standard we will reverse only if we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error has the burden to show the necessary prejudice. See *McLinn*, 307 Kan. at 318. We now review the elements of reckless second-degree murder.

Reckless second-degree murder results when the defendant killed an individual unintentionally but recklessly under circumstances that show extreme indifference to the value of human life. See K.S.A. 2017 Supp. 21-5403(a)(2). Again, "recklessness" is defined as consciously disregarding a substantial and unjustifiable risk that circumstances exist or that a result will follow and that disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. See K.S.A. 2017 Supp. 21-5202(j).

Pritchard now argues that because he knew Cindy had a drinking problem, keeping a loaded .380 pistol hidden in the couch cushions where she could access the gun was reckless. He also argues that when she reached for the gun, he immediately reached for her hands to try to wrestle the loaded gun away from her—"a drunk person." Based on this information, Pritchard argues that a jury "could find [his] actions, given what he knew and Cindy's intoxicated state to be a reckless action [which] led to Cindy's death."

Just as with our analysis under involuntary manslaughter, the record on appeal demonstrates no evidentiary basis to establish the element of recklessness. Pritchard's inconsistent accounts of the event and his motivation during his trial testimony, when compared with his demeanor and actions just after the shooting, coupled with the physical evidence, shows there was no evidentiary basis for a recklessness instruction.

Based on this record, we are not firmly convinced that the jury would have reached a different verdict had the district court instructed on reckless second-degree murder. The district court's failure to so instruct was not clearly erroneous.

*The court properly instructed the jury to consider the degrees of homicide sequentially.*

Pritchard argues for the first time on appeal that the court should have instructed the jury to consider the lesser included offenses simultaneously, rather than sequentially. In doing so, he relies on *State v. Graham*, 275 Kan. 831, 836-37, 69 P.3d 563 (2003), which held that a jury must be instructed to consider intentional second-degree murder and voluntary manslaughter simultaneously. Pritchard acknowledges that he did not object to the court's sequential order of instructions and contends that this court must thus determine whether the district court's error was clearly erroneous under the ruling in *Graham*, 275 Kan. at 837, 840.

10

We decline his invitation to so rule because *Graham* has been overruled. In *State v. Sims*, 308 Kan. 1488, 431 P.3d 288 (2018), the Kansas Supreme Court found the "simultaneous consideration rule is a judicial innovation that has proved confusing and unworkable. . . . Therefore, we overrule *Graham* and hold a district court is not required to instruct a jury to consider a lesser included homicide offense simultaneously with any greater homicide offense." 308 Kan. at 1503. We take the Supreme Court at its word and thus deny Pritchard any relief on this point.

Finding no instructional errors, we affirm the district court.