No. 68,145

STATE OF KANSAS, *Appellee,* v. RICHARD W. HARMON, *Appellant.*

(865 P.2d 1011)

Opin-ion filed December 10, 1993.

*Hazel Haupt,* assistant appellate defender, argued the cause, and *Wendy L. Rhyne Slayton,* assistant appellate defender, and *Steven R. Zinn,* deputy appellate defender, were with her on the brief for appellant.

*Debra S. Byrd,* assistant district attorney, argued the cause, and *Charles R. Reimer,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Richard Harmon, was convicted of first-degree murder of his younger brother, Jimmy Harmon, and sentenced pursuant to the jury's recommendation for a period of life, with no parole before 40 years. The defendant appeals his conviction and sentence.

The defendant seeks reversal of his conviction because (1) the trial court refused his requested instruction on involuntary manslaughter; (2) the trial court instructed the jury to weigh an unsworn taped statement made by a witness by the same standards as testimony given under oath; and (3) the trial court limited cross-examination. In addition, the defendant claims his sentence must be set aside because of erroneous instructions to the jury concerning the hard 40 sentence. Finding no reversible error,

we affirm the conviction; however, we vacate the sentence and remand for resentencing.

The defendant lived in Wichita with his father and younger brother, Jimmy. On the evening of the murder, the defendant and a friend, Steve McCoy, went out together. After drinking for awhile, both began looking for Jimmy so the three of them could enjoy the rest of the evening together. They found Jimmy at a bar with a girlfriend. The four went to another bar, drank some more, and during the early morning hours, parted company. The defendant and McCoy, while driving home, spotted Jimmy's truck parked near the side of the road. The defendant stopped his truck and attempted to talk with his brother, but a scuffle ensued. The defendant got the worst of this encounter and testified that he was "furious, humiliated, and scared." He testified at trial that his brother approached him with a tire iron, but the defendant had not mentioned this fact in an earlier statement to the police.

After the encounter, the defendant went home, found his father's loaded revolver, and returned to find his brother. Upon coming out of the Town and Country store after purchasing a package of cigarettes, he spotted his brother. He walked toward his brother, pulled out the revolver, pointed it at his brother, and shot him two times in the chest and once in the back of the neck as his brother turned away. The defendant claimed he was scared and that his brother had threatened him and had lunged toward him with his hands in the air as he fired the revolver.

## Involuntary Manslaughter

The defendant argues that the trial court erred by not giving his requested instruction on involuntary manslaughter. He argues that the evidence at trial established that he committed a lawful act (self-defense) in an unlawful manner (with excessive force).

The defendant is correct that the use of excessive force in self-defense may under some circumstances require an instruction on involuntary manslaughter. *State v. Gregory*, 218 Kan. 180, 186, 542 P.2d 1051 (1975). "Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the wanton commission of an unlawful act not amounting to a felony, or in the *commission of a lawful act in*

*an unlawful* or wanton manner." (Emphasis added.) K.S.A. 21-3404.

Although the trial court gave an instruction on self-defense, under the facts of this case, the trial court was not obligated to instruct on self-defense or involuntary manslaughter. The facts in this case are analogous to the facts in *State v. Meyers*, 245 Kan. 471, 781 P.2d 700 (1989). In *Meyers*, the defendant left an altercation, retrieved a weapon, returned to find the parties involved, and upon being attacked by those parties, killed one person and injured another. In *Meyers*, we said that the defendant was neither entitled to a self-defense instruction nor an instruction on involuntary manslaughter.

Although the defendant said more than once he did not want to or intend to kill his brother, we have held that such statements alone are insufficient to establish that the killing was unintentional if, when viewed in light of other competent evidence, such testimony is insubstantial. *State v. Dixon*, 248 Kan. 776, 786-87, 811 P.2d 1153 (1991); *State v. Staab*, 230 Kan. 329, 340, 635 P.2d 257 (1981).

The defendant fought with his brother earlier in the evening. His brother got the best of him in that encounter and belittled him in front of Steve McCoy. The defendant testified that he was "furious, humiliated, and scared." He got into his truck and drove to his father's house for the sole purpose of obtaining a gun, which he intended to use against his brother. He found an unloaded rifle, looked for shells without success, eventually found his father's loaded revolver, and left the house looking for his brother.

When he arrived at the location where he expected his brother to be, he hid his truck, concealed the loaded gun in the back of his pants, and went into the Town and Country store to purchase a pack of cigarettes. As he was leaving the store, he saw his brother, approached his brother, pulled out his revolver, pointed it at his brother, and fired it several times. He testified that he knew shooting his brother two times in the chest and once in the back could kill him.

The defendant contends this case is controlled by *State v. Hill*, 242 Kan. 68, 744 P.2d 1228 (1987). In *Hill*, the defendant had a gun in her purse to take back to her house because she was

concerned about prowlers. She did not know the gun was loaded. She and her brother and a friend went to a bar. The entrance was very dark and crowded. The victim pushed the defendant several times and said something to the defendant that made the defendant afraid. The defendant reached for her pistol because she could not see the victim's hands and was afraid for her life. Several witnesses corroborated the defendant's testimony. 242 Kan. at 72-73. We held that the trial court erred in refusing to instruct on involuntary manslaughter. 242 Kan. at 78.

Unlike *Hill*, the defendant in this case was the aggressor. He went looking for his brother with a loaded gun for the express purpose of shooting his brother "if [he] had to." Even with the defendant's testimony that his brother threatened him verbally, was hostile and still angry, and lunged at the defendant with his hands in the air, the defendant, as the aggressor, was not entitled to use deadly force in self-defense unless he had exhausted every other reasonable means to escape the danger he perceived. *State v. Rutter*, 252 Kan. 739, 747, 850 P.2d 899 (1993). At the time of the shooting, the defendant was not, therefore, engaged in a lawful act.

In *Meyers*, the defendant, not unlike this case, claimed that he was entitled to an instruction on involuntary manslaughter because the evidence showed he committed the lawful act of self-defense in an unlawful manner. We noted that a duty to instruct on all lesser crimes "arises only when there is evidence under which the defendant may reasonably be convicted of the lesser offense. *State v. Bishop*, 240 Kan. 647, Syl. ¶ 7, 732 P.2d 765 (1987)." *State v. Meyers*, 245 Kan. at 474. In *Meyers*, we noted:

"Subsection (2) of K.S.A. 21-3214 does not allow an individual who '[i]nitially provokes the use of force against himself or another' to claim he was defending himself. Meyers provoked all confrontations with the Esquivel brothers. After the second confrontation, Meyers temporarily withdrew, returned to his hometown, armed himself with a rifle in order to assault the brothers, and then returned to Garden City. As for the fatal confrontation, the defendant drew the Esquivels from their home and lured them to the secluded area where he intended to physically harm them. In addition, the exceptions of subsections (3)(a) and (b) do not apply to Meyers. Meyers could have avoided the fatal confrontation by remaining in Deerfield." 245 Kan. at 477.

Not unlike *Meyers*, the defendant in this case could have avoided the fatal confrontation by simply not returning with a loaded revolver to find his brother.

Finally, we recognize that a defendant "has a right to have the court instruct the jury on all lesser included offenses established by substantial evidence, however weak, unsatisfactory, or inconclusive the evidence may appear to the court." We also recognize that "the unsupported testimony of the defendant alone, if tending to establish such lesser degree, is sufficient to require the court to so instruct." *State v. Deavers*, 252 Kan. 149, Syl. ¶ 1, 843 P.2d 695 (1992). However, the evidence must be substantial, and "there must be evidence which, viewed in the light most favorable to the defendant, would justify a jury finding in accordance with the defendant's theory." *State v. Gonzales*, 253 Kan. 22, Syl. ¶ 2, 853 P.2d 644 (1993). The evidence considered by the trial court in its rejection of the defendant's involuntary manslaughter instruction would not justify a jury finding of an unintentional killing or of a lawful act done in an unlawful manner.

## Jury Instruction on Unsworn Statement

The defendant was also charged with the attempted murder of Steve McCoy. McCoy's trial testimony departed significantly from his earlier statements to the police and his preliminary hearing testimony. The State was allowed to treat McCoy as a hostile witness. His prior statements were used to impeach his trial testimony. The court later allowed the State to introduce McCoy's earlier statements as substantive evidence pursuant to K.S.A. 1992 Supp. 60-460(a), which provides an exception to the hearsay rule for previous statements by a person who is present and available for cross-examination. The State played for the jury a tape recording of McCoy's statement to the police and read the transcript of his preliminary hearing testimony.

The trial court gave instruction No. 16 over defense counsel's objection. Instruction No. 16, a modification of PIK Crim. 3d 52.12, provided:

"During this trial, evidence was presented by the reading of testimony of Steve McCoy taken under oath or otherwise recorded at another time and place. It is to be weighed by the same standards as other testimony."

The defendant argues on appeal that the court erred in giving that instruction because it advised the jury "that unsworn testimony was to be given the same kind of weight as sworn testimony." Instruction No. 16 departs from PIK Crim. 3d 52.12 by the addition of the words "or otherwise recorded." The defendant contends this change is significant because PIK Crim. 3d 52.12 was intended only to address sworn testimony that happened to be taken at another time or place.

The defendant is correct that PIK Crim. 3d 52.12 covers sworn testimony. It is titled "Testimony taken before trial." In its original form, it refers only to "testimony of a witness taken under oath at another time and place." Black's Law Dictionary defines "testimony" as "[e]vidence given by a competent witness under oath or affirmation." Black's Law Dictionary 1476 (6th ed. 1990). The fact that the trial court departed from the standard PIK instruction does not establish error. The question is whether the instruction given misleads the jury or in some way prejudiced the defendant's right to a fair trial. It should be noted that the defendant does not contend that the out-of-court statements were improperly admitted under K.S.A. 1992 Supp. 60-460(a) and K.S.A. 60-401(b).

Instruction No. 16 instructs the jury that McCoy's out-of-court statements are to be "weighed by the same standards as other testimony." The court did not instruct the jury that it should give the same weight to unsworn statements as it gave to sworn testimony; it merely instructed the jury to weigh that evidence by the same standards as it weighed other testimony. The jury was clearly advised that it was for them "to determine the weight and credit to be given the testimony of each witness."

During oral argument, counsel for the defendant was asked whether it would be appropriate to instruct the jury that sworn testimony should be given more weight than unsworn statements. Counsel acknowledged that such an instruction might completely distort the factfinding process. For example, a defendant may confess to a crime before trial, but deny guilt at trial. Under these circumstances, the instruction the defendant would have had the trial court give in this case would most certainly have distorted the factfinding process.

All relevant evidence admitted is to be considered by the jury in arriving at its verdict. In this case, the trial court simply instructed the jury to consider McCoy's statement as well as his testimony and weigh it all by the same standards as other testimony. It was for the jury to decide what weight and credit to be given to the evidence considered in arriving at a verdict. Advising the jury to treat testimony a certain way and a witness' prior unsworn statements admitted into evidence another way would distort the factfinding process. Counsel may argue on final argument that less weight should be given to an unsworn prior statement than to sworn testimony, but in the final analysis the jury is to determine the weight and credit to be given to all relevant evidence admitted at trial. The instruction given was not erroneous.

The defendant's reliance on *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), is misplaced. Neither case addresses the question raised by the defendant.

In *Chambers*, the defendant called a witness to introduce the witness' written confession to the crime at issue. On cross-examination, the witness repudiated the confession and asserted an alibi. The court denied the defendant's motion to treat the witness as a hostile witness. The trial court also excluded as hearsay the testimony of three other witnesses to whom the first witness had confessed the crime shortly after it occurred. The United States Supreme Court reversed and remanded, finding that the trial court violated the defendant's right to confront and cross-examine adverse witnesses and to present witnesses in his own behalf.

In *Chapman*, the defendants appealed their convictions, alleging that the prosecutor and the court made improper comments about the defendants' failure to testify. The Supreme Court reversed, finding that the repeated references to the defendants' choice not to testify was not harmless error.

## Limitation upon Cross-Examination

One of the defendant's theories of defense was that his voluntary intoxication made him incapable of forming the specific intent necessary for the crimes charged. The jury was instructed

on the defense of voluntary intoxication. The defendant was stopped by a Wichita police officer while leaving the scene of the crime in his truck. At trial, the court sustained the State's objection to the defendant's attempt to elicit testimony from a police officer about the field sobriety tests that typically are conducted when a driver is suspected of driving while under the influence. The defendant argued at trial that the officer's direct testimony had given the jury the impression that the defendant was not intoxicated and that he should have been entitled to present to the jury the officer's testimony that he did not do any of the standard field sobriety tests. Thus, the officer could not say for sure that the defendant was not intoxicated.

The defendant is correct that a criminal defendant has a right to present a full and complete defense and that includes the right to confront and cross-examine the witnesses against him, citing *Rock v. Arkansas*, 483 U.S. 44, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987), and *Chambers*, 410 U.S. 284. As the State notes, however, the right to cross-examine witnesses is subject to evidentiary rules, and the trial court has broad discretion in controlling the examination. *State v. Mitchell*, 234 Kan. 185, 188, 672 P.2d 1 (1983); *In re Nichols*, 2 Kan. App. 2d 431, 434, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978).

The officer testified on direct that when he instructed the defendant to get out of the car, keep his hands on his head, and walk backward toward the sound of the officer's voice, the defendant was able to do so "in a fairly straight line." The officer testified that he noticed a slight odor of alcohol on the defendant, but that the defendant's eyes were not "extremely bloodshot," and his speech was clear. The officer testified that he "wouldn't say that [defendant] was very intoxicated."

On cross-examination, the officer testified that he had the defendant walk backwards as a safety precaution, not a sobriety test. The officer testified about his familiarity with field sobriety tests and that the defendant's driving did not give the officer reason to believe that the defendant was intoxicated. The officer testified that even though he smelled alcohol on the defendant's breath, he was not concerned about how much the defendant had had to drink, even though intoxication might affect the accuracy of the defendant's statements. The officer's testimony on cross-ex-

amination certainly left the impression that the officer did not conduct any specific field sobriety tests to determine whether the defendant was legally intoxicated. Because that is precisely what the defendant sought to accomplish with the inquiry about specific types of tests, the court properly ruled that the subject matter had been covered.

The evidence at trial also indicated that the shooting occurred at about 3:05 a.m. and that the defendant's blood alcohol concentration between 4:30 and 5:00 a.m. was .097. Evidence of the combination of the lack of field sobriety tests and the relatively high blood alcohol concentration two hours after the shooting accomplished the defendant's goal of undermining the credibility of the officer's testimony that the defendant did not appear to be "very intoxicated" at the time he was picked up.

## Sentencing

The State sought a mandatory term of imprisonment of 40 years under the provisions of K.S.A. 1992 Supp. 21-4624. K.S.A. 1992 Supp. 21-4624(2) provides that

"upon conviction or adjudication of guilt of a defendant of murder in the first degree based upon the finding of premeditated murder, the court upon motion of the county or district attorney, shall conduct a separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years."

K.S.A. 1992 Supp. 21-4624(3) provides guidance for the court, the defendant, and the State concerning what is relevant evidence relating to aggravating and mitigating circumstances. K.S.A. 1992 Supp. 21-4624(4) provides:

"At the conclusion of the evidentiary portion of the sentencing proceeding, the court shall provide oral and written instructions to the jury to guide its deliberations."

All of the defendant's claims regarding sentencing center upon the instructions given by the trial court under the provisions of 21-4626(4). It should be noted that the court did not have the PIK instructions available at the time of sentencing.

The defendant raises three contentions with reference to the instructions on sentencing. First, the defendant claims that the trial court erred in refusing his request to specifically instruct on the mitigating circumstance of intoxication. Second, the defendant

contends that the court erred in instructing the jury that sympathy should not be considered by it in determining his sentence. Finally, the defendant claims that the court erred because, under its instructions, the jury was allowed to conclude that any mitigating factors had to be found by unanimous vote and beyond a reasonable doubt.

The refusal of the court to give the defendant's requested instruction on the mitigating circumstance of intoxication did not constitute error. The instructions given on mitigating circumstances incorporated the substance of the defendant's request and were adequate to provide clear guidance as required by K.S.A. 1992 Supp. 21-4624(4). However, this same conclusion does not apply to the second and third contentions of the defendant.

The trial court did not give an instruction on sympathy during the guilty/not guilty phase of the trial. Over the objection of the defendant, the trial court decided that such an instruction was required during the sentencing phase. The court instructed the jury that it must "consider this case without favoritism or sympathy for or against either party. Neither sympathy nor prejudice should influence you."

In giving this instruction, the trial court appeared to be concerned that without the instruction, the jury might well have been overwhelmed by sympathy for the victims of a previous crime committed by the defendant. The defendant was charged and convicted of aggravated batteries in 1984, and these prior convictions were the basis of the aggravating circumstances that the jury ultimately found justified imposition of the hard 40 sentence. The basis of those convictions was that the defendant beat a mother and daughter with a baseball bat because the daughter would not submit to his sexual advances. Under its instruction concerning aggravating circumstances, the jury would necessarily consider the defendant's prior convictions. The emotional testimony of the aggravated battery victims and the emotional testimony of the defendant's aunt formed the basis for the court's anti-sympathy instruction.

In the midst of their deliberation on sentence, the jury requested additional guidance from the court on what was meant by the term "mitigating circumstances." The court, after conferring with counsel, advised the jury that mitigating circumstances

"are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability."

The defendant contends that the above definition of mitigating circumstances given by the court connotes sympathy, which the court had previously instructed the jury it was not to consider. The term "mercy" used by the court is defined as "[k]ind and compassionate treatment of an offender . . . or other person under one's power." The American Heritage Dictionary of the English Language 821 (new coll. ed. 1978). See also Webster's New Collegiate Dictionary 713 (1980) ("compassion or forbearance shown esp. to an offender or to one subject to one's power"). Compassion, in turn, is a synonym for sympathy.

The court, in its attempt to benefit the defendant by cautioning the jury not to let sympathy or prejudice cloud its judgment in sentencing the defendant, further advised the jury that it may consider factors which in fairness and mercy may be considered as extenuating and reducing the degree of moral culpability. While the intent of the court in giving both instructions is clear from the record, there is no guarantee that the jury understood the intent of the court in the instructions given.

The defendant contends that the two instructions were confusing because the jury was instructed not to consider sympathy, but the jury was further advised that it may consider mercy. There is a real possibility that the tension between the anti-sympathy instruction and the "fairness and mercy" response to the jury's question could have been confusing to the jury.

Finally, the defendant argues that the court's instructions on mitigating and aggravating circumstances created further confusion. The defendant contends that the jury may have concluded that it had to find the existence of mitigating factors by evidence beyond a reasonable doubt.

Instruction No. 4 provided:

"If you find by unanimous vote, beyond a reasonable doubt, that one or more of the aggravating circumstances . . . . exist, and that the existence of such aggravating circumstance(s) is not outweighed by any mitigating circumstance(s) which is found to exist, your recommendation shall be that Richard Harmon serve a mandatory minimum term of imprisonment of forty (40) years."

Without the benefit of guidance from PIK instructions, the court tracked the language of the statute. The present PIK instructions separate aggravating and mitigating circumstances and clearly advise the jury that it is only the aggravating circumstances that must be found to exist by evidence beyond a reasonable doubt.

The court's instructions, however, made no such division and could lead to some confusion concerning the findings with reference to mitigating circumstances. Yet, a careful reading of instructions Nos. 4 and 5 of the court properly require only that the aggravating circumstances be found beyond a reasonable doubt. The reference to aggravating circumstances immediately is preceded by the "unanimous vote, beyond a reasonable doubt" qualifier. The reference to mitigating circumstances, however, says "any mitigating circumstance(s) which is found to exist."

Nevertheless, there is potential for confusion. Perhaps this confusion is somewhat alleviated when all of the instructions are read together. Such a reading makes it more clear that the State has the burden to prove the existence of aggravating circumstances beyond a reasonable doubt. Instruction No. 2 asked the jury to determine whether any aggravating circumstances existed "beyond a reasonable doubt." Instruction No. 3 merely listed the mitigating circumstances, and did not specify a burden of proof. Instruction No. 5 required the jury to reduce its finding of aggravating circumstances to writing, but told the jury that it was not required to write down any mitigating circumstances it found. Finally, instruction No. 8 told the jury that the State had the burden to prove beyond a reasonable doubt that there were aggravating circumstances and that they were not outweighed by any mitigating circumstances.

Standing alone, the potentially confusing nature of instructions Nos. 4 and 5 does not require vacation of the sentence. However, the potential for confusion exists, and, coupled with the confusing nature of the court's anti-sympathy instruction and "fairness and mercy" response to the jury's question, we conclude that the defendant's sentence must be vacated and that this case must be remanded for further sentencing proceedings.

In remanding this case for further proceedings, we are governed by the provisions of K.S.A. 1992 Supp. 21-4627, which provide for an automatic review by and appeal to the Supreme Court in "[a] judgment of conviction resulting in a mandatory term of imprisonment" of 40 years. K.S.A. 1992 Supp. 21-4627 provides that such a judgment of conviction resulting in a mandatory term of imprisonment "shall be subject to automatic review by an appeal to the supreme court of Kansas in the manner provided by the applicable statutes and rules of the supreme court governing appellate procedure."

The Code of Criminal Procedure provides that

"[a]ny appellate court may reverse, affirm or modify the judgment or order appealed from, or may order a new trial in the district court. In either case the cause must be remanded to the district court with proper instructions, together with the decision of the appellate court, within the time and in the manner to be prescribed by rule of the Supreme Court." K.S.A. 22-3605.

In setting forth the responsibilities of this court with reference to a hard 40 sentence, the law provides that the Supreme Court of Kansas shall consider the question of sentence on appeal as well as any errors asserted in the review on appeal and shall be authorized to notice unassigned errors appearing of record if the ends of justice would be served thereby. K.S.A. 1992 Supp. 21-4627(2). K.S.A. 1992 Supp. 21-4627(3) provides:

"With regard to the sentence, the court shall determine:
(a) whether the mandatory term of imprisonment was imposed under the influence of passion, prejudice or other arbitrary factor; and
(b) whether the evidence supports the findings that an aggravating circumstance or circumstances existed and that any mitigating circumstances were insufficient to outweigh the aggravating circumstances."

Finally, K.S.A. 1992 Supp. 21-4627(4) provides:

"The court shall be authorized to enter such orders as are necessary to effect a proper and complete disposition of the review and appeal."

The hard 40 sentencing statute is the only instance wherein the legislature has required that the jury be involved in the sentencing phase of the trial. K.S.A. 1992 Supp. 21-4624(2) provides:

"[U]pon conviction or adjudication of guilt of a defendant of murder in the first degree based upon the finding of premeditated murder, the court upon

motion of the county or district attorney, *shall conduct a separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years."* (Emphasis added.)

Unless the defendant waives a jury trial, the decision as to whether to impose a mandatory term of imprisonment of 40 years "shall be conducted by the trial judge before the trial jury." If a member of the trial jury is not able to serve in the sentencing proceeding, "the court shall substitute an alternate juror who has been impaneled for the trial jury." K.S.A. 1992 Supp. 21-4624(2). The provisions of 21-4624(2) further provide that if there are not enough alternate jurors to replace unavailable trial jurors, the court may summon a special jury of 12 persons to determine whether to impose a mandatory term of imprisonment of 40 years. While the statute expresses a preference that members of the jury who decided guilt or innocence serve as jury members to determine imposition of sentence, the legislature clearly intended that the determination of this issue be made by the jury, unless the defendant waives a jury trial in accordance with K.S.A. 22-3403.

In this case, we have determined that instructions given to the jury under the provisions of 21-4624(4) did not provide clear guidance to the jury in this "separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years." K.S.A. 1992 Supp. 21-4624(2). Given the clear indication that the legislature contemplated a jury decision in regard to imposition of this type of sentence, we deem it appropriate to remand this case for consideration by a separate jury to make that same determination upon remand. K.S.A. 1992 Supp. 21-4624(2) authorizes the trial judge to use a new jury selected in accordance with 21-4624(2) to determine the action.

In order to effect a "proper and complete disposition of [our] review and [this] appeal," (K.S.A. 1992 Supp. 21-4627[4]) consistent with the provisions of 21-4624, this case must be remanded for another "separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years." K.S.A. 1992 Supp. 21-4624(2). On remand, the proceeding is to be conducted in accordance with the provisions of K.S.A. 1992 Supp. 21-4624, K.S.A. 1992

Supp. 21-4625, K.S.A. 1992 Supp. 21-4626, and K.S.A. 1992 Supp. 21-4628 just as if no sentence had ever been imposed in this case. Upon remand, the court should give consideration to our decision of *State v. Willis,* 254 Kan. 119, 864 P.2d 1198 (1993), adopting a hard 40 sentencing instruction for use under K.S.A. 1992 Supp. 21-4625(6).

We note that in some instances it would not be appropriate to remand for such a proceeding. In *State v. Deavers,* 252 Kan. 149, 843 P.2d 695 (1992), we vacated a hard 40 sentence imposed after the State failed to comply with the "notice at arraignment" requirement of K.S.A. 1992 Supp. 21-4624(1). We based our decision on the mandatory nature of the notice requirement. K.S.A. 1992 Supp. 21-4624(1) provides that the required notice of intent to request the hard 40 "shall be filed with the court and served on the defendant or the defendant's attorney at the time of arraignment." K.S.A. 1992 Supp. 21-4624(1) also provides that if the notice is not provided as required by the statute, the State "may not request such a sentencing proceeding and the defendant, if convicted of murder in the first degree, shall be sentenced as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder."

K.S.A. 1992 Supp. 21-4624(1) clearly provides that notice is a condition precedent to the availability of a hard 40 sentencing proceeding. Because the opportunity to give such notice is forever lost once arraignment has passed, it was not possible that such error be corrected on remand. In *Deavers,* we remanded the case for resentencing in accordance with 21-4624(1), which would preclude imposition of the hard 40 sentence because notice was not provided.

There may be other instances wherein remand for a special sentencing proceeding to determine whether a defendant shall be required to serve a mandatory term of imprisonment of 40 years would be inappropriate. However, here, because the error relates to jury instructions in the separate sentencing proceeding, such error may be corrected by remanding for another separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years under the provisions of 21-4624(2).

Conviction affirmed, sentence vacated, and case remanded for resentencing.