NOT DESIGNATED FOR PUBLICATION

No. 114,992

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID CONRAD WIDMER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed April 21, 2017. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

*Per Curiam*:  David Conrad Widmer appeals his conviction and sentence for the aggravated battery of his sister, Brandy Knight. Widmer raises five issues. First, he contends the trial court should not have given the jury an initial aggressor instruction. Second, Widmer objects to being referred to as "the defendant" in the jury instructions. Third, he alleges the prosecutor erred in comments made during his closing argument. Fourth, Widmer asserts the trial court erred in allowing the prosecutor to question a witness on a subject matter that was beyond the scope of direct examination. Finally, he

claims the trial court erred in refusing to grant a further durational departure at sentencing.

Having reviewed the record and considered the parties' briefs addressing the five issues Widmer raises on appeal, we find no error and, as a result, affirm the conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 2015, Brandy, her husband, Alex, and their 6-month-old infant visited Widmer's apartment to watch the Super Bowl. During this gathering, Alex received a call and stated that he had to go to work. Widmer agreed to drive Alex and the two men left the apartment.

At trial, the accounts of what happened next varied significantly. According to Widmer's wife, Tiffany, while the two men were gone, Brandy complained about Alex's laziness and cried because the couple had fought earlier that day. Brandy, however, testified that she neither fought with Alex nor discussed the subject with Tiffany. Upon Widmer's return to the apartment, he informed Brandy that he believed Alex was cheating on her. This conversation upset both Widmer and Brandy, and tensions escalated. Brandy eventually stated that she wanted to leave.

At trial, Brandy testified to her recollection of what happened leading up to the physical altercation. According to her, she went to a corner of the apartment to put her shoes on. Widmer followed and continued to yell at her from "a foot and a half to two feet away." Brandy stated that Widmer's conduct was "[s]cary" because "he was yelling at [her] and moving his arms a lot and . . . [h]is skin was turning bright red and his eyes were bulging and his veins were popping out of his neck." Brandy repeatedly told Widmer that she wanted to leave, but he told her he did not want her to leave and he

2

impeded her attempt. Widmer was yelling angrily and, according to Brandy he was "drooling and spitting on me."

Attempting to leave, Brandy "tried to duck and dive underneath [Widmer] with my son in my arms keeping my son's head close to me like this (indicating) and then it was right here and I shoved him to get underneath his arms." As Brandy described it, "[i]t was like a dodge, dive thing." She then placed her infant son on the couch and turned to face Widmer. At this point, according to Brandy, Widmer punched her in the face. Brandy may have been rendered briefly unconscious from the punch because she recalled sitting on the floor and getting punched again by Widmer.

Tiffany presented a very different rendition of events at trial. Tiffany testified that she helped Brandy put a sweater on her son, while standing between Brandy and Widmer. Brandy then launched herself past Tiffany and head-butted Widmer. Tiffany stated that Brandy repeatedly tried to attack Widmer, but that he defended himself each time by punching Brandy in the face. Later, before Brandy left, both she and Widmer apologized to each other and hugged.

Medical examinations revealed that Brandy sustained a fractured eye socket and a broken nose. Brandy also testified that she had extensive facial swelling and bruising.

As a result of this incident, Widmer was charged with aggravated battery, a severity level 4 person felony in violation of K.S.A. 2014 Supp. 21-5413(b). At trial, Widmer contended that he struck Brandy in self-defense. A jury found Widmer guilty of aggravated battery. The trial court granted a downward durational departure to a 140-month prison term with 36 months' postrelease supervision. Widmer appeals.

3

INITIAL AGGRESSOR INSTRUCTION

On appeal, Widmer first contends the trial court erroneously provided the jury with an initial aggressor instruction. That instruction, Instruction No. 20, provided:

"A person who initially provokes the use of force against himself is not permitted to use force to defend himself unless:

"1.     The person reasonably believes that he is in present danger of death or great bodily harm, and he has used every reasonable means to escape such danger other than the use of physical force which is likely to cause death or great bodily harm to the other person.

"OR

"2.     The person has in good faith withdrawn from physical contact with the other person and indicates clearly to the other person that he desires to withdraw and stop the use of force, but the other person continues or resumes the use of force."

At trial, Widmer objected to the inclusion of Instruction No. 20, arguing, "there was no evidence presented that [his] actions provoked [Brandy's] actions in the case."

The trial judge overruled Widmer's objection, explaining:

"[T]his instruction just gives a general instruction with regard to provocation. I think that . . . —there is sufficient evidence in the case, at least that the initial contact that was made by [Brandy] in this case with the defendant, which later was the reason that the defendant has argued that he felt a right—he had to—he had a right to defend himself.

"The provocation part of that is the part where the victim testified that she was either cornered or blocked or in some way prohibited from trying to leave the premises and that in an attempt to get away from what she felt was a threatening situation, made physical contact with the defendant with her shoulder and her side of her neck or part of her upper body and I think that sort of evidence does lend itself to a least providing this instruction to the jury to at least state what is the correct . . . statement of the law with

4

regard to whether or not a person can—maybe the jury doesn't find that there was a provocation of the use of force to—against him by the victim in this case, but in any event, there is such evidence in the case that would allow the giving of that instruction."

On appeal, Widmer renews his objection to Instruction No. 20, and he alleges that an initial aggressor instruction was not legally or factually appropriate based on the facts of this case.

We begin with a summary of our standard of review. When reviewing challenges to a trial court's jury instructions, Kansas courts follow a multistep analysis:

"'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless . . . .'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

The first step of reviewability concerns whether this court may exercise its appellate jurisdiction and whether the defendant raised any objection to the jury instruction at trial. See *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012). In the present case, there is no objection to our jurisdiction and Widmer did object to Instruction No. 20 at trial.

Next, we consider the legal and factual appropriateness of the trial court's decision to provide the jury with an initial aggressor instruction. Widmer argues that Instruction No. 20 was inappropriate because the trial evidence established that Brandy—not

5

Widmer—initiated the physical contact. In other words, Widmer alleges that he acted in self-defense and he was not the initial aggressor.

Self-defense is codified in K.S.A. 2016 Supp. 21-5222(a) and provides: "A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person . . . against such other's imminent use of unlawful force." However, K.S.A. 2016 Supp. 21-5226 sets forth the initial aggressor exception, stating that the self-defense justification is not available to a person who:

> "(b) initially provokes the use of any force against such person or another, with intent to use such force as an excuse to inflict bodily harm upon the assailant; or
>
> "(c) otherwise initially provokes the use of any force against such person or another, unless:
>
> (1) Such person has reasonable grounds to believe that such person is in imminent danger of death or great bodily harm, and has exhausted every reasonable means to escape such danger other than the use of deadly force; or
>
> (2) in good faith, such person withdraws from physical contact with the assailant and indicates clearly to the assailant that such person desires to withdraw and terminate the use of such force, but the assailant continues or resumes the use of such force."

The Pattern Instructions for Kansas (Criminal) implement this exact statutory language in PIK Crim. 4th 52.250 (2015 Supp.), and the trial court incorporated verbatim the PIK language in Instruction No. 20. Of note, Kansas courts are strongly encouraged to use the "PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015).

Nevertheless, Widmer argues Instruction No. 20 was not legally appropriate under the circumstances because "the plain language of the initial-aggressor instruction clearly

contemplates . . . the provocation of force or threat of force, and not merely name calling or inaction." In support of this assertion, Widmer states the trial evidence established that Brandy first made contact with him. Widmer then argues that an initial aggressor instruction is only proper in those instances where the defendant physically attacks the victim first. Widmer concludes that, because "[b]oth parties agree that [Brandy] instigated the physical conflict," it is clear "he was [not] the initial aggressor and the initial-aggressor instruction was [not] legally . . . appropriate."

As the State points out, however, Kansas courts have consistently held that an initial aggressor instruction may be appropriate in circumstances where the defendant did not necessarily initiate physical contact with the victim. See *State v. Meyers*, 245 Kan. 471, 781 P.2d 700 (1989) (self-defense instruction not appropriate where defendant provoked victims by throwing firecrackers and leading them on a high-speed chase).

For example, in *State v. Salary*, 301 Kan. 586, 343 P.3d 1165 (2015), the victim became upset with the defendant when the defendant refused to speak to his grandmother. As a consequence, the victim informed the defendant, "'Either you're gonna walk out or you're gonna get carried out, but one way or another, your ass is leaving [this house] right now, today.'" 301 Kan. at 591. In response, the defendant did not leave, but instead returned to his room and armed himself. Later, the defendant shot and killed the victim when the victim moved towards him. At trial, the defendant claimed he had acted in self-defense because he believed the victim was armed. The trial court, however, denied the defendant's request for a self-defense jury instruction. 301 Kan. at 589-91.

On appeal, our Supreme Court affirmed the trial court's ruling and found the defendant "was not entitled to an instruction on self-defense." 301 Kan. at 598. The court emphasized the defendant's decision to stay in the victim's house, noting that "[h]e . . . refused to obey [the victim's] order to leave, when leaving would have ended any confrontation." 301 Kan. at 596. Such conduct, our Supreme Court found, constituted

7

provocation that rendered the defendant ineligible for a self-defense instruction. 301 Kan. at 597.

*Salary* rebuts Widmer's contention that an initial aggressor instruction is only appropriate in those circumstances where the defendant first makes physical contact with the victim. As *Salary* shows, other conduct that elicits a physical response from the victim could—in some circumstances—be characterized as provocation within the meaning of K.S.A. 2016 Supp. 21-5226.

Based on the evidence presented in this case, the trial court did not err when it found there was testimony that Widmer's conduct provoked Brandy's physical contact (pushing past him with her upper-body or elbow). Although Tiffany testified that Brandy exacerbated the argument with Widmer and eventually attacked him, Brandy's version of events differed significantly. In her testimony, Brandy stated that she verbalized her desire to leave Widmer's apartment, but she was prevented from leaving by Widmer when he cornered her and started yelling. Only after that incitement did Brandy acknowledge that she "shoved [Widmer] to get underneath his arms," placed her child on a sofa, turned to face Widmer, and was punched in the face. These competing eyewitness accounts left the jury with the factual question of whether Widmer acted in self-defense or, alternatively, whether his aggressive conduct provoked Brandy's efforts to escape from the confrontation by leaving the apartment.

Our Supreme Court addressed the propriety of giving an initial aggressor instruction in a similar case, *State v. Hunt*, 257 Kan. 388, 894 P.2d 178 (1995), and found that giving the instruction was proper. The Supreme Court reasoned:

> "The jury was not instructed that the defendant was an initial aggressor or that the defendant had provoked [the victim] into reaching for what the defendant thought was a gun. . . . [T]he question of whether the defendant was an aggressor was one for the jury.

8

If the jury did not find that the defendant was an aggressor, it could disregard the limit on the defendant's right to use self-defense." 257 Kan. at 394.

Our court has followed the approach enunciated in *Hunt* in another circumstance. See *State v. Jones*, No. 108,357, 2014 WL 37678, at *7 (Kan. App. 2014) (unpublished opinion) ("[T]he jury was entitled to decide whether [the defendant] had provoked [the victim]. . . . [I]f the jury concluded [the defendant] had not provoked [the victim], it could have disregarded the limit on the right to use self-defense found in the initial aggressor instruction . . . .").

As discussed earlier, there were sufficient facts to support the theory that Widmer provoked the physical altercation by verbally accosting Brandy and impeding her attempt to leave the apartment. Given this factual basis, an initial aggressor instruction was legally appropriate. In this regard, we take guidance from *Hunt* and apply it to the resolution of this case. Contrary to Widmer's contention, Instruction No. 20 merely established the parameters whereby the jury could find that he did not act in self-defense. Indeed, the jury could have considered Instruction No. 20 and concluded that it did not apply to its view of the facts, ultimately embracing Widmer's theory of self-defense. However, the facts of this case—and the competing testimony of the eyewitnesses— clearly show that an initial aggressor instruction was both legally and factually appropriate. We find no error.

Moreover, assuming *arguendo* the trial court erroneously provided the initial aggressor instruction, we conclude that any error was harmless. An error is harmless if the State can demonstrate "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

9

In his brief, Widmer asserts that "[t]he giving of the [initial aggressor] instruction . . . allowed the jury to disregard his defense based on an incorrect application of the law." But as the State points out, the jury also received a self-defense instruction which correctly informed the jury of the legal basis for Widmer's theory of defense. Regardless of the presence of an initial aggressor instruction, the jury still was instructed regarding Widmer's self-defense theory. Nothing in the record suggests the inclusion of Instruction No. 20 impermissibly affected the jury's verdict. Thus, if there was error, it was harmless.

REFERENCE TO WIDMER AS "THE DEFENDANT"
THROUGHOUT THE JURY INSTRUCTIONS

Next, Widmer contends the trial court erred when it referred to him as "the defendant" rather than by his full name throughout the jury instructions. Widmer raised this objection at trial, but the trial judge denied it, stating:

"[T]hat is a common request. And, frankly, PIK could have, I guess, in the preparation of the Pattern Instructions for Kansas could have said to insert the defendant's name here, but they haven't done that. I'm assuming it might be just because it is easier to set—get it typed out and get it prepared.

"So I'm a believer that I should follow PIK unless there is some exceptional circumstances and so your objection is noted but will be denied."

Because this is another complaint about jury instructions made by Widmer, our same standard of review and analytical progression applies in resolving this issue. See *Woods*, 301 Kan. at 876. Because Widmer raised this objection below, our court reviews the trial court's ruling for harmless error. See *State v. Jaghoori*, No. 112,920, 2016 WL 4262485, at *4 (Kan. App. 2016) (unpublished opinion).

Without citing any supporting caselaw, Widmer argues that referring to him by his full name, rather than as the defendant, was both legally and factually appropriate. In his view, this modification to the PIK instructions "would have humanized him, and put him on equal footing with [Brandy], who was not referred to as 'the victim' or 'the complaining witness,' but by her name." Widmer also contends that calling him the defendant could have prejudiced the jury against him because "there was a question for the jury as to who was actually the victim."

Despite these arguments, Widmer acknowledges that Kansas law does not support his legal contention—a fact emphasized by the State. In *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004), the Kansas Supreme Court rejected an almost identical legal argument and ruled that "PIK instructions do not require the use of a criminal defendant's name and use of PIK instructions generally is recommended." The Supreme Court concluded: "[The defendant] was not prejudiced by the instructions referring to him as defendant." 278 Kan. at 159.

Widmer also acknowledges that Kansas courts generally should defer to the PIK. See *Barber*, 302 Kan. at 377-78. However, he asserts this "case presented a situation where modification of 'the defendant' to his name 'David Widmer' would have been appropriate."

We are not persuaded. Widmer has not shown that the use of the term the defendant throughout the jury instructions was error. On the other hand, based on *Wilkerson*, we are convinced it was not error for the trial court to follow the PIK instructions rather than insert Widmer's name throughout the instructions.

Moreover, assuming *arguendo* the trial court was in error, we are persuaded the error would have been harmless. See *Ward*, 292 Kan. 541, Syl. ¶ 6. Widmer proposes that "[h]umanizing the complaining witness while dehumanizing [him] biased the jury and

11

made it more likely the jury would see [Brandy] as a person and [him] as merely the defendant." The record on appeal does not show any factual basis for this argument. Widmer, as the defendant in a criminal case, was a party to the litigation and Brandy was not. There is no reasonable possibility that referring to Widmer as the defendant rather than by his name in the instructions contributed to the verdict. See 292 Kan. 541, Syl. ¶ 6.

PROSECUTORIAL ERROR DURING CLOSING ARGUMENT

Widmer next contends the prosecutor erred during the State's closing argument. In particular, Widmer takes issue with the following italicized statements made by the prosecutor during his first closing argument:

> "[Officer] Shurmantine is with the defendant, he estimated for over five hours and not at any time did he see any type of injury [on the defendant] whatsoever. You will see. Go through the photographs of the defendant. Go through the shot that was taken of him at two o'clock in the morning, that night, there is nothing on him.
> "Now, we'll talk more about self-defense when I get back up here in just a little bit after [defense counsel] talks, *but is it reasonable to believe that what* [*Widmer*] *did, when he looks like this, that he had to do this, that he had no other choice, that it was necessary for him to do that. This was not necessary. This was not reasonable. It was not self-defense. It was retaliation and there is a difference.*
> "The defendant should be held accountable for what he did. He should be held accountable by finding him guilty of what he's charged with which is aggravated battery (Option 1) and that's what we'd ask you to do when you go back to the jury room." (Emphasis added.)

Referencing these italicized statements, Widmer asserts the prosecutor improperly gave his "personal opinion in the form of unsworn testimony" regarding Widmer's guilt and "invaded the province of the jury."

In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), our Supreme Court recently modified the standard of review for what used to be denoted as prosecutorial misconduct. Under this new standard for prosecutorial error, appellate courts engage in a two-step review, which can be described as "error and prejudice." 305 Kan. at 109. In the first step of this analysis,

"[t]o determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

If the appellate court finds error, it moves to the second step to "determine whether the error prejudiced the defendant's due process rights to a fair trial," using the traditional constitutional harmless error inquiry. 305 Kan. at 109. An error is harmless if the State can demonstrate "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6).

Did the prosecutor commit error? Generally, prosecutors are not permitted to give a personal opinion regarding the ultimate guilt or innocence of a defendant, as "'such expressions of personal opinion[s] are a form of unsworn, unchecked testimony, not commentary on the evidence of the case.' [Citation omitted.]" *State v. Peppers*, 294 Kan. 377, 399, 276 P.3d 148 (2012). Nevertheless, in *Peppers,* the Supreme Court found that a *directional* statement that serves "'as an opening for the prosecutor's upcoming summation of the evidence'" is permissible, as are a "'prosecutor's comments asking the jury not to let the defendant get away with the crime.'" 294 Kan. at 399. Indeed, the Supreme Court held that a prosecutor is allowed to argue that the evidence proves the

13

defendant's guilt provided the prosecutor adds directional language, such as "'the evidence shows the defendant's guilt'" to the statement. 294 Kan. at 399-400.

In *Peppers*, the prosecutor told the jury, "'I'm going to ask that you to find this defendant . . . guilty of murder in the first degree . . . . Why? Because he did it.'" 294 Kan. at 399. Later, the prosecutor commented, "'[Y]ou need to come in, you need to look at the defendant, and you need to tell him he's guilty and you need to look him in the eye and say you are guilty of murder . . . because he is.'" 294 Kan. at 399. On appeal, the Kansas Supreme Court held both statements "strayed into impermissible expressions of [the] prosecutor's personal opinion on [the defendant's] guilt," because the prosecutor "failed to include any directional language." 294 Kan. at 400.

Widmer argues that the prosecutor's statements in this case are identical to those made in *Peppers*. In his view, the prosecutors in both cases posed rhetorical questions that were then answered "in such a way as to comment on the defendant's guilt." Much like *Peppers*, Widmer argues that the prosecutor's statements required directional language to be permissible.

The State counters by arguing that the prosecutor never expressed his personal opinion to the jury, but merely "touched upon the requirements of self defense, [including] the objective belief that self defense was necessary." The State continues: "If [Widmer] appear[ed] untouched, and [Brandy] ha[d] multiple fractures to her face, it [was] proper to point that out to the jury."

In resolving this issue, we find guidance from our Supreme Court's opinion in *State v. Mireles*, 297 Kan. 339, 301 P.3d 677 (2013). There, the prosecutor made the following comment during closing argument: "'I have gone through the scene at the motel room. I won't repeat it. *But I do not believe evidence shows a credible version of the evidence to support the lesser included offenses.*'" (Emphasis added.) 297 Kan. at 368.

14

On appeal, the defendant argued this statement constituted an improper expression of the prosecutor's opinion. The Kansas Supreme Court disagreed and noted "[t]he comment at issue . . . came after the prosecutor gave a lengthy discussion of the evidence presented at trial establishing [the defendant's] guilt." 297 Kan. at 369. The Supreme Court concluded:

> "[T]he prosecutor essentially stated that he did not believe, based on the evidence he discussed, that the defendant could be found guilty of the lesser included offenses. Accordingly, we construe the prosecutor's statement as being 'merely directional and not an expression of the prosecutor's personal opinion.'" 297 Kan. at 368 (quoting *Peppers*, 294 Kan. at 400).

The present case is similar to *Mireles*. Here, the prosecutor preceded his statements which Widmer claims were improper, with a lengthy rendition of the trial evidence. He then compared the witness testimony with Widmer's self-defense theory and concluded the two were incompatible. In context, then, the prosecutor's comments were similar to the permissible statements found in *Mireles*, except that even here, unlike *Mireles*, the prosecutor did not state his *belief* in the evidence which, under certain circumstances, may be considered improper argument. And, in contrast to the improper conclusory statements made in *Peppers*, the prosecutor's argument in this case merely called Widmer's defense theory into question. We are persuaded that the prosecutor's comments were directional and not an expression of his personal opinion.

Moreover, assuming for purposes of argument there was prosecutorial error, we find it would be harmless. In this regard, an error is harmless if the State can demonstrate beyond a reasonable doubt that it did not affect the outcome of the trial, *i.e.*, where there is no reasonable possibility the error affected the jury's verdict. *Sherman*, 305 Kan. at 109.

Widmer argues the prosecutor's statements influenced the jury "[b]ecause the evidence against [him] was not overwhelming." To this end, Widmer notes that the

15

question of whether he committed aggravated battery was a matter of witness credibility, that is, whether the jury believed the testimony of Tiffany or Brandy. The State counters that the comments "would not have made an impact on the decision making of the jury, [that] was tasked with determining the credibility of Tiffany and Brandy."

We agree with both parties that the jury's evaluation of the credibility of Widmer, Brandy, and Tiffany was an important consideration in arriving at the guilty verdict in this case. All three witnesses testified at trial and the jury was fully capable of assessing first-hand their veracity when testifying to their differing accounts of the incident. Additionally, the direct evidence of the severity of Brandy's injuries in comparison to the lack of obvious injury to Widmer also may have influenced the verdict. Against this substantive evidentiary backdrop, the jury was advised in Instruction No. 4 that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." Considered in context, we are convinced beyond a reasonable doubt that the prosecutor's cursory remarks did not affect the outcome of the trial or raise a reasonable possibility that any error affected the jury's verdict. See *Sherman*, 305 Kan. at 109.

CROSS-EXAMINATION BEYOND THE SCOPE OF DIRECT EXAMINATION

For his next issue, Widmer contends the trial court abused its discretion when it allowed the State to cross-examine Tiffany outside the scope of her direct examination.

"The scope of cross-examination is subject to reasonable control by the trial court." *State v. Corbett*, 281 Kan. 294, Syl. ¶ 4, 130 P.3d 1179 (2006). Appellate courts review a trial court's decision to limit cross-examination for abuse of discretion. 281 Kan. at 307-08. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law;

16

or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

At trial, the following colloquy occurred during the State's cross-examination of Tiffany:

"[PROSECUTOR:] Now, you stated today there was a second punch that was thrown by [Widmer]; is that right?

"[TIFFANY:] Yes.

"[PROSECUTOR:] And according to what you're saying today, that was after Brandy went after your husband for a second time?

"[TIFFANY:] Yes.

"[PROSECUTOR:] Where did he hit her that time?

"[TIFFANY:] I believe in the face.

"[PROSECUTOR:] Now, Ms. Widmer, you stated you're aware of the fact that your husband spoke to law enforcement that night; is that right?

"[TIFFANY:] Yes.

"[PROSECUTOR:] *Are you aware of the fact that he denied hitting your husband or—excuse me, [Brandy]?*

"[DEFENSE COUNSEL:] Objection, Your Honor, it is outside the scope of direct.

. . . .

"[THE COURT:] So the objection was what?

"[DEFENSE COUNSEL:] Just outside the scope. I believe that he needs to finish the question first then.

"[THE COURT:] I'll overrule that.

"[PROSECUTOR:] My question, Judge, is if she is aware of the fact that her husband denied even hitting [Brandy]. I don't think that's outside the scope we discussed.

"[THE COURT:] Well, all right. I've ruled. Overruled. And if you know the answer to that question, you may answer.

"[TIFFANY:] No.

"[PROSECUTOR:] You're not aware of that?

"[TIFFANY:] No.

17

"[PROSECUTOR:] All right. So if anybody said that your husband didn't hit Brandy, that would be inaccurate; correct?

"[TIFFANY:] Yes." (Emphasis added.)

Widmer argues that the prosecutor's cross-examination exceeded the scope of Tiffany's direct examination because "[t]he defense never asked [Tiffany] about her interview with police or what her husband said to police when they came later to investigate."

The transcript of Tiffany's direct examination shows that she testified about the Super Bowl party, argument, physical violence and its aftermath. In particular, she was questioned about the actions of Widmer and Brandy immediately before and during the physical altercation that resulted in Brandy's injuries. During her account, Tiffany specifically described how Widmer struck Brandy twice with his fist.

The defense never questioned Tiffany during direct examination about her pretrial statements to law enforcement officers regarding the incident. Still, those statements which the prosecutor frequently referenced during cross-examination related to the exact same subject matter of Tiffany's direct examination—her eyewitness account of the altercation. The State's efforts at impeaching Tiffany at trial through the use of her pretrial statements was appropriate cross-examination and well within the scope of her direct examination.

We find support for our conclusion in *State v. Griffin*, No. 103,057, 2011 WL 1877698 (Kan. App. 2011) (unpublished opinion). In that case, law enforcement officers arrested the defendant on suspicion of driving under the influence of alcohol. At the time of his arrest, the defendant admitted to officers that he had been driving his vehicle. At trial, however, the defendant recanted this statement and testified that he had not been driving the vehicle. During cross-examination, the State questioned the defendant "about

18

his failure to tell anyone he was not driving the car until he testified at trial." 2011 WL 1877698, at *4.

On appeal, the defendant argued this question exceeded the scope of the direct examination. Our court disagreed, stating: "The general subject of [the defendant's] direct examination was who was driving the car, and the prosecutor's questions on cross-examination that [the defendant] now complains about were relevant and responsive to this same general subject." 2011 WL 1877698, at *4.

Similar to *Griffin*, the prosecutor's cross-examination questions covered the same subject matter as defense counsel's questions on direct examination. We discern no abuse of discretion by the trial court.

DENIAL OF A FURTHER DURATIONAL DEPARTURE SENTENCE

Finally, Widmer contends the sentencing court abused its discretion by "not depart[ing] enough" from the presumptive prison sentence for aggravated battery.

At time of sentencing, Widmer faced the potential of 154 to 172 months' imprisonment. Widmer moved the sentencing court, however, for a downward durational departure to 100 months' imprisonment. The trial judge refused to grant such an extensive departure, but he reduced Widmer's sentence to a 140-month prison term, reasoning:

> "[T]he Court is going to find there [are] substantial and compelling reasons [to depart from the guidelines]. The mitigating factor I see is this is a person who has attacked and hurt his own family member and the rest of the family is in upheaval over this whole situation. It sounds like another sister is here who is siding on behalf of [Widmer] who struck her sister and I don't understand that, how those sides are being taken. It sounds like a hugely dysfunctional situation going on here.

19

"Frankly, I think that based on the violent report that this defendant has that it is probably good that he's not having much contact with these minor children. Violence begets violence and it sounds like that is all Mr. Widmer knows."

Appellate courts review the extent of a downward departure sentence for abuse of discretion and determine whether the departure "is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history." *State v. Spencer*, 291 Kan. 796, 808, 248 P.3d 256 (2011). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Marshall*, 303 Kan. at 445.

Widmer asserts the sentencing court abused its discretion by not granting a further durational departure because it did not consider other substantial and compelling factors. Specifically, Widmer notes that he "took responsibility [for his actions] by attempting to negotiate a plea agreement and by not seeking a dispositional departure to probation." He also adds that "the altercation occurred partially as a result of substance abuse and alcohol abuse issues, which [could] be treated as opposed to punished." Finally, Widmer argues that his family "needed him emotionally and for support" and that this fact ought to have received greater consideration from the sentencing court.

Our review of the sentencing transcript shows that Widmer raised the exact same arguments before the sentencing court in seeking a dispositional departure that he does on appeal. Given that the sentencing court granted a durational departure significantly reducing Widmer's sentence following the presentation of these arguments and evidence in support, there is no showing that the judge did not consider these arguments in granting the departure.

On the other hand, the sentencing court also heard the prosecutor's arguments in opposition to any durational departure sentence:

"Judge, I know the Court can read the PSI [presentence investigation report] and how . . . Mr. Widmer came to be a criminal history A. It goes way back to 2002 if we just talk about crimes against other people. We have assault in '02, battery in '03, resisting arrest in '04, battery on a law enforcement officer in '05, domestic battery in '05, resisting arrest in '07, domestic battery in '08, domestic battery in '08, aggravated battery in 2010, domestic battery in 2012, domestic battery in 2014, and now we're here on another aggravated battery."

Given the entire record, we find that Widmer has failed to show an abuse of discretion by the sentencing court in denying him a further durational departure sentence.

Affirmed.